## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HUI WANG,

           Plaintiff,

v.

OMNI HOTELS MANAGEMENT
CORPORATION,

           Defendant.

Civil Action No.
3:18-cv-2000 (CSH)


**AUGUST 16, 2019**

## RULING ON PLAINTIFF'S MOTION TO COMPEL [Doc. 24] AND CONSENT MOTION FOR PROTECTIVE ORDER [Doc. 25]

**Haight, Senior District Judge:**

### I.  INTRODUCTION

In this personal injury action, Plaintiff Hui Wang sues defendant Omni Hotels Management (herein "Defendant" or "Omni") for damages arising from a "slip and fall" she allegedly suffered on September 25, 2018, in the lobby of the Omni New Haven Hotel at Yale ("Omni Hotel").  Currently pending before the Court are two related motions: Plaintiff's Motion to Compel [Doc. 24] and Omni's Consent Motion for Protective Order [Doc. 25].  The Court rules on each below.

### II.  DISCUSSION

#### A.  Plaintiff's "Motion to Compel"

As part of discovery in this action, Plaintiff issued "Requests for Production of Documents" and "Interrogatories" to Omni, to which Omni responded on March 14, 2019.  *See* Doc. 24-2 (Omni's "Objections and Responses").  Plaintiff believes that Omni failed to respond sufficiently to certain interrogatories and production requests.  Consequently, on May 15, 2019, Plaintiff filed a motion

to compel Omni to answer two Interrogatories (Nos. 9 and 15) and to respond to two Requests for Production (Nos. 2 and 5). In her motion, Plaintiff represented that on April 1, 2019, the parties conferred in good faith with respect to these particular items and were unable to resolve their differences. Doc. 24, at 1. Accordingly, Plaintiff moved pursuant to Rule 26(b)(1), Fed. R. Civ. P., to obtain full responses from Omni, noting that under that Rule, the proper scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Doc. 24-5, at 3 (quoting Fed. R. Civ. P. 26(b)(1)). In particular, Plaintiff asserted that the "disputed discovery . . . is directly relevant to the core issues in this case and fall[s] well within the liberally broad boundaries applicable to discovery." Doc. 24-5, at 3 (citing, *inter alia*, *In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998)).

### 1. Interrogatory No. 9 and Production Request No. 2 - Omni's "Written Policies and Procedures"

Interrogatory No. 9 asks Omni whether it had "in effect at the time of the Plaintiff's injuries any written policies or procedures that relate to the kind of conduct or condition that Plaintiff alleges caused [her] injury." Doc. 24-5, at 4. In addition to asserting vagueness and ambiguity as objections, Omni objected to this question because it "seek[s] proprietary and/or confidential business information." *Id.* Instead, Omni requested "entry of an appropriate protective order prior to production or description." *Id.*

Similarly, Plaintiff's Production Request No. 2 sought a "copy of [Omni's] written policies and procedures concerning the matter which is the subject of the complaint as referred to in [Omni's] answer to Interrogatory [No.] 9." Doc. 24-5, at 6. Omni responded by referring to, and incorporating in full, its objections and answer to Interrogatory No. 9. *Id.*

Thereafter, the parties resolved their dispute as to these two items regarding "written policies and procedures" with an agreed upon "Protective Order," which is the subject of the pending consent motion [Doc. 25] Omni filed with the Court on June 4, 2019. The Court will address that motion and accept the parties' requested protective order for reasons stated below.

### 2. Interrogatory No. 15 and Production Request No. 5 - Surveillance Video

As to the two other discovery requests, Interrogatory No. 15 and Production Request No. 5, however, the parties remain at odds. These items comprise a second discovery category relating to Omni's surveillance video of the lobby of the Omni Hotel in New Haven on the date of Plaintiff's alleged "slip and fall," September 25, 2018. In particular, these requests seek "all recordings . . . of any party concerning this lawsuit or its subject matter." Doc. 24-5, at 4, 6.

In Interrogatory No. 15, Plaintiff asks Omni to identify "surveillance material discoverable under Rule 26 of the Federal Rules of Civil Procedure," including "all recordings, by film photograph, videotape, audiotape or any other digital or electronic means, of any party concerning this lawsuit or its subject matter, including any transcript thereof . . . ." Doc. 24-5, at 4. Then, in Production Request No. 5, Plaintiff instructs Omni to provide "a copy of each and every recording of surveillance material discoverable under Rule 26 of the Federal Rules of Civil Procedure, by film, photograph, videotape, audiotape or any other digital or electronic means, of any party to this lawsuit concerning this lawsuit or the subject matter thereof . . . ." *Id.*, at 6.

Omni objects to Interrogatory No. 15 "on the basis that it seeks information . . . that is purely of impeachment nature and therefore is not relevant or reasonably calculated to lead to the discovery of admissible evidence at this state of litigation." *Id.*, at 4. Furthermore, Omni responds that if such information exists, it "would have been gathered in anticipation of litigation or as part of Defendants'

[sic] work product and therefore protected from disclosure." *Id.*, at 5. Additionally, Omni states that "to the extent this interrogatory applies to footage captured by security cameras located on the property of the alleged incident, . . . such cameras automatically record video of areas within the range of their lens[es]." *Id.* Finally, Omni incorporates all of these foregoing objections into its response to Production Request No. 5. *Id.*, at 6.

According to Plaintiff, during a subsequent Rule 37 conference, Omni's counsel "indicated that the defendant had a video surveillance that showed the subject incident but he did not believe that plaintiff would be entitled to a copy of the video until after the defendant took plaintiff's deposition." *Id.,* at 5. In response, Plaintiff argues that "[u]nder applicable Connecticut law governing video surveillance, plaintiff is entitled to a copy of the video because it is from a fixed security camera inside the lobby of the hotel." *Id.* As authority, she cites *Race v. Wal-Mart Stores, Inc.*, No. HHD-CV-12-6030536-S, 2012 WL 6743576 (Conn. Super. Ct. Nov. 29, 2012), a Connecticut state case in which the trial court granted the Plaintiff permission to file a "non-standard" discovery request of store security video of her fall by interpreting local Practice Rules liberally to allow "a fair contest with the basic issues and facts disclosed to the fullest practical extent.'" 2012 WL 6743576, at *2 (quoting *Perez v. Mount Sinai Hospital*, 7 Conn. App. 514, 519 (1986)). In so holding, the Connecticut Superior Court distinguished between surveillance footage taken by a store in the course of its business and "specially procured surveillance video of a purportedly injured plaintiff taken after the accident occurred,'" which is "often granted qualified protection from discovery under the work product privilege." *Id.* (citing *Target Corp. v. Vogel*, 41 So. 3d 962, 963 (Fla. Dist. Ct. App. 2010)).

In addition, Plaintiff cited *Crabtree v. Wal-Mart Stores East LP*, No. 8:17-cv-2324-T-JSS,

2018 U.S. Dist. LEXIS 24640 (M.D. Fla. Feb. 15, 2018), in which a district court in Florida compelled production of video surveillance before a plaintiff's deposition.[1] Doc. 24-5, at 5. Citing Florida state court authority, the *Dondenna* court rested its decision to compel production of the video on the fact that the defendant had failed to oppose production and had in fact "present[ed] no evidence that the plaintiff [would] tailor her deposition testimony to the video footage" if permitted access to the video before plaintiff's deposition. 2018 U.S. Dist. LEXIS 24640, at *2 (citation omitted). Therefore, the court concluded that the "primary evidentiary value" of the video was "proof of the underlying facts surrounding the incident," even if the video "could [potentially] be offered for impeachment value." *Id.*

In the case at bar, Plaintiff emphasizes the relevance of the video she seeks because it shows the circumstances of her "slip and fall inside the lobby of the defendant's hotel, including which door [she] entered and the area where [she] fell." Doc. 24-5, at 5.

As to this video, however, Omni objects to production, seeking to preserve it as potential impeachment evidence in the case. Doc. 26, at 2. In so stating, Omni clarifies that it "is not refusing to produce [the video] *after* Plaintiff's Deposition[,] which has been set for September 24, 2019." *Id.* (emphasis added). After that deposition, Omni intends to use the surveillance video to impeach Plaintiff's testimony. In its counsel's words, "Omni will present as impeachment evidence any variance between what Plaintiff claims under oath and what can be objectively observed both

---

[1] The Court notes that both cases cited by Plaintiff were unpublished decisions and neither case constitutes binding precedent in the Second Circuit, in which this Court sits. Also, the holding in the former case focused on the "work product" rule, *Race*, 2012 WL 6743576, at *2, and that in the latter case on the defendant's failure to oppose the requested production, *Crabtree,* 2018 U.S. Dist. LEXIS 24640, at *2. For reasons discussed *infra*, such considerations are inapposite to the present parties' dispute.

to the Court and to any eventual fact[-]finding body." *Id.*, at 6.

Omni asserts that it is particularly inclined to question Plaintiff's credibility and to impeach her testimony in light of her inconsistent positions regarding her medical condition during negotiations with Plaintiff's counsel to set the location of her deposition in Connecticut. *Id.*, at 3. Omni states that during a May 30, 2019, conference, Plaintiff's counsel provided Omni's counsel with a medical report to prove that Plaintiff was medically unable to travel to Connecticut for her deposition. *Id*. That report was a document from Plaintiff's doctor in China, dated May 17, 2019, which stated that Plaintiff is "not suggested to walk or take public transportation for a long time." Doc. 26, at 3; Doc. 26-1, at 1, 5; Doc. 26-2, at 1. As a result of reading the report, Omni's counsel decided to suggest a compromise "whereby Omni would agree to produce the surveillance video [at issue] . . . prior to Plaintiff's deposition, if Plaintiff agreed to have her deposition taken in the United States." Doc. 26, at 3; *see also* Doc. 26-3 (Email from Jason Mackey to Michael P. Foley, Jr., May 30, 2019 at 5:31 p.m.).

During a follow-up phone call, counsel for both sides then agreed to a late September 2019 deposition in Connecticut. As Omni's counsel states, "[d]uring that same call, however, counsel for Omni learned that Plaintiff had already planned to return to Connecticut in late September 2019 to attend a program at Yale despite the previously provided medical report and representation she could not travel to CT."[2] *Id.* Therefore, although Omni had previously agreed to produce the surveillance

---

[2] In her recent "Amended Motion for Protective Order," Plaintiff explained that September 2019 (as opposed to June 2019) was a possible time for her deposition in Connecticut because that date would give her sufficient time to heal before traveling. Doc. 29-1, at 3. It is unknown, however, when Plaintiff planned her September trip to Yale. If, as Omni's counsel asserts, Plaintiff was already planning a September trip to Yale at the same time she was denying her ability to travel, Plaintiff has made factually conflicting statements. Therefore, Omni views her planned September trip to Yale as evidence of duplicity regarding her medical condition. In any event, Omni's intended

video before Plaintiff's deposition, it became unwilling to do so, finding that "Plaintiff's credibility is substantially at issue and the basis for [its prior] objection to producing such surveillance prior to the deposition was well founded." *Id*., at 4.

Consequently, Omni asserts that it is entitled to "reasonably protect itself . . . from having Plaintiff adjust her testimony to conform to or explain her actions on an objective video recording." *Id.,* at 4. Plaintiff's deposition remains set for September 24, 2019, in her counsel's office in Cheshire, Connecticut. *Id.*, at 8. Meanwhile, Omni has expressed a willingness to produce the surveillance video following the deposition and well within the discovery period, which will close on January 24, 2020. *Id.*

## B. Defendant's "Consent Motion for Protective Order"

Before addressing the discovery dispute regarding the surveillance video, the Court resolves the undisputed discovery issue relating to Omni's confidential business information. The parties' proffered resolution is a consented-to "Protective Order" [Doc. 25-1], governing disclosure of Omni's trade secrets and various forms of business information. Omni thus moves for a protective order pursuant to Rule 26(c)(1), Fed. R. Civ. P., requesting that the Court "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed in a designated way." Doc. 26, at 2.

Pursuant to Rule 26(c)(1), the Court may, for good cause, issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by, for example,

---

impeachment purpose for the surveillance video appears to relate to Plaintiff's version of the events during the "slip and fall" in September 2018, as opposed to post-injury events in September 2019.

"forbidding the disclosure or discovery," or "specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery." Moreover, Rule 16(c)(2)(F), Fed. R. Civ. P., expressly authorizes the court to "consider and take appropriate action" to control and schedule discovery, "including orders affecting disclosures under Rule 26 . . ." The Second Circuit has interpreted Rule 26(c) as "a grant of power to impose conditions on *discovery* in order to prevent injury, harassment, or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 945 (2d Cir. 1983) (emphasis in original) (citations omitted). Additionally, "Rule 26(c) 'confers broad powers upon the court to limit or prevent discovery even though the information sought is relevant and within the scope of Rule 26(b).'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quoting *Coyne v. Houss*, 584 F.Supp. 1105, 1109 (E.D.N.Y.1984)).

In the instant case, Omni has filed a consent motion [Doc. 25], seeking protection of its confidential business information. Rule 26 (c) specifically contemplates that in the case of "trade secret[s] or other confidential . . . commercial information," the Court may order that such information "not be revealed" at all or "be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The parties have reached an agreement to protect Omni's "confidential and proprietary [business] information or documents" in this litigation. *See* Doc. 25, ¶ 2.

"Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'" *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). In fact, in complex cases, "[t]he propriety and desirability of protective orders securing the confidentiality of documents containing sensitive

commercial information . . . is too well established to belabor." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 416 (E.D.N.Y. 2007) (citations omitted). It thus follows that when parties have "a legitimate interest in keeping the discovery materials out of the public hands for commercial reasons," protective orders are often granted to accommodate them "in light of those interests." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 319 (D. Conn. 2009).

In general, "good cause" exists for approving a confidentiality agreement "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005). *See also Havens v. Metro. Life Ins. Co.*, No. 94 Civ. 1402(CSH), 1995 WL 234710, at *11 (S.D.N.Y. April 20, 1995). Here, Omni has asserted that it has commercially sensitive information with respect to its requested "written policies and procedures;" and there is no opposition to Omni's assertion of "good cause" because the parties have agreed that Omni's commercially sensitive information must be protected.

Furthermore, the Second Circuit has specified that during the initial stages of litigation, no public right of access exists with respect to materials produced. *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995). "[W]hile a presumption of public access exists as to documents filed with the court, '[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions.'" *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting *Amodeo*, 71 F.3d at 1050). Specifically, the "public's right of access to discovery material only encompasses

access to 'judicial documents,' that is, such 'items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001)). During discovery, a court may thus "impose an initial protective order based upon *a general showing* of good cause, and may modify that order at a later time if more specific grounds for its continuance remain indiscernible." *Id.* (emphasis added) (citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 148 (2d Cir. 1987)).

In the case at bar, the materials at issue are being exchanged as part of the discovery phase; and the parties recognize that *to seal* any document filed on the docket, a motion must be made to seal pursuant to Local Civil Rule 5(e). Doc. 25-1, ¶ 6. Under these circumstances and in light of the parties' concurrence with respect to the proffered agreement, the Court will grant the motion and enter the requested "Protective Order" [Doc. 25-1].[3] Accordingly, the dispute with respect to Interrogatory No. 9 and Production Request No. 2, regarding Omni's written policies and procedures, is fully resolved, rendering the "Motion to Compel" [Doc. 24] moot as to these two discovery requests. In addition, Omni's "Consent Motion for Protective Order" will be granted. The Court will enter the proffered "Protective Order" [Doc. 25-1] appended to that motion.

## C. Motion to Compel - Surveillance Video

### *1. Standard to Compel*

Turning to the remaining discovery dispute regarding surveillance video, the Court must apply the standard to grant a motion to compel. Pursuant to Rule 37(a)(3)(B), Fed. R. Civ. P., "[a] party seeking discovery may move for an order compelling an answer, designation, production, or

---

[3] Plaintiff has filed a "Response" to Omni's "Consent Motion" [Doc. 25] which verifies that she "agrees to the entry of a Protective Order with respect to the Defendant's policies and procedures as set forth in Defendant's Consent Motion for Protective Order. . . ." Doc. 34.

inspection" if, *inter alia*, "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents or fails to respond that inspection [of requested documents] will be permitted — or fails to permit inspection — as requested under Rule 34."[4]

In a federal civil proceeding, parties may only obtain discovery regarding a non-privileged matter that is relevant to a claim or defense involved in the pending litigation. Rule 26(b)(1), Fed. R. Civ. P., as amended in 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The amended Rule thus sets forth factors to consider in analyzing proportionality – *e.g.*, importance of issues, amount in controversy, parties' access to information and resources, *etc.* – yet specifies that information still need not be admissible at trial to be discoverable. *Id. See also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581(PKC) (JLC), 2019 WL 3334503, at *5 (S.D.N.Y. July 25, 2019).[5] Relevance, construed liberally, thus creates a broad vista for discovery,

---

[4] Rule 33 specifies the permissible number, scope, and response time for interrogatories in general. Fed. R. Civ. P. 33 (a)-(b). Rule 33 also mandates that with respect to the party on whom the interrogatories are served, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." *Id.* 33(b)(3).

Rule 34 enables any party to serve upon any other party to an action a request for documents, electronically stored information, and other "designated tangible things." Fed. R. Civ. P. 34(a)(1).

[5] As the Court explained in *CBF Industria de Gusa S/A*:

"Since the 2015 amendments to the federal rules, the scope of discovery permitted has narrowed. Nonetheless, relevance is still a broad concept under Rule 26(b)(1)." *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684 (KHP), 2019 WL 1517552, at

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1988), such that a trial becomes "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). *See also Martino v. Nationstar Mortg. LLC*, No. 17-CV-1326 (KAD), 2019 WL 2931639, at *1 (D. Conn. July 8, 2019) ("[R]elevance is defined broadly to include any materials which appear reasonably calculated to lead to the discovery of admissible evidence.") (quoting *Troupin v. Metro. Life Ins. Co.*, 169 F.R.D. 546, 547 (S.D.N.Y. 1996)).

Nonetheless, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). For example, even if a discovery request seeks relevant information or material, a party served with that request may object on such grounds as: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C) (i)-(iii).

When asserting such an objection, one must do more than "simply intone [the] familiar litany" that the discovery sought is "burdensome, oppressive or overly broad." *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 19 (D. Conn. 2011) (quoting *Compagnie Française d'Assurance Pour le*

---

*2 (S.D.N.Y. Apr. 8, 2019) (internal citations omitted). Under the amended rules, "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER) (JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016).

2019 WL 3334503, at *5.

*Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984)). Rather, "the objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Sullivan*, 276 F.R.D. at 19 (quoting *Compagnie Française*, 105 F.R.D. at 42).

Ultimately, "[t]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Yancey v. Hooten*, 180 F.R.D. 203, 207 (D. Conn.1998) (citations and internal quotation marks and punctuation omitted).

### 2. *Omni's Surveillance Video*

Plaintiff has requested that this Court compel Omni to answer an interrogatory regarding "recordings, by film, photograph, videotape, audiotape or any other digital or electronic means, of any party concerning this lawsuit." Doc. 24-2 (Interrogatory No. 15), at 11. She also requests a "copy of each and every recording of surveillance material . . . concerning this lawsuit or the subject matter thereof," including a transcript of same. *Id.* (Production Request No. 5), at 17.

Omni has objected to responding regarding surveillance video due to its value as an impeachment tool. In its detailed "Objection" filed with the Court, Omni confirms that it is willing to produce the video but not until "after Plaintiff's Deposition which has been set for September 24,

2019."[6]  Doc. 26, at 2.  Omni's counsel has explained that he had been willing to turn the video over to Plaintiff before her deposition until learning that she had been planning to visit Connecticut in September 2019 to attend a Yale program, which conflicted with her prior statements that she was "not medically able to travel to Cheshire, CT," for her deposition.  *Id.*, at 3 (quoting Doc. 26-2 (Email from Plaintiff's counsel, Michael Foley, Jr., dated May 30, 2019)).  Omni asserts that "it appears clear based on the foregoing Plaintiff['s] credibility is substantially at issue."  *Id.*, at 4. Therefore, Omni plans to "present as impeachment evidence any variance between what Plaintiff claims under oath and what can be objectively observed both to the Court and to any eventual

---

[6]  In agreeing to turn over the surveillance video, Omni makes clear that it either no longer views the video as privileged "work product" under the Federal Rules or has waived any such assertion.  The work product rule, as codified in Federal Civil Rule 26(b), generally protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).  "It is universally agreed that a document whose purpose is to assist in preparation for litigation is within the scope of the Rule and thus eligible to receive protection if the other conditions of protection prescribed by the Rule are met." *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998).

In the present case, it appears that the work product doctrine would not protect the surveillance video because it was taken contemporaneously with the alleged "slip and fall" incident, in the course of Omni's business. It was not prepared after the incident by an investigator or attorney, either in anticipation of, or preparation for, litigation.  Materials  created in the ordinary course of business are not protected.  "The work product rule 'does not extend to documents in an attorney's possession that were prepared by a third party in the ordinary course of business and would have been created in essentially similar form irrespective of any litigation anticipated by counsel.'" *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 545 (S.D.N.Y. 2013) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384–85 (2d Cir.2003)).  *See also Holbourn v. NCL (Bahamas) Ltd.*, 305 F.R.D. 685, 687–88 (S.D. Fla. 2014) ("[M]aterials or documents drafted or created in the ordinary course of business are not protected. Here, the [v]ideos were obtained from surveillance cameras, hence created in the ordinary course of business.") (citation and internal quotation marks omitted).

factfinding body." *Id.*, at 6.

Omni further states that "[i]mpeachment is especially important because credibility is always an issue of consequence and . . . testimony which aids in the jury's determination of a (witness's) credibility and veracity (is always relevant)." *Id.*, at 7 (citing *United States v. Quinto*, 582 F.2d 224, 233 (2d Cir. 1978)) (internal quotation marks omitted). In other words, if Omni can show that Plaintiff has prevaricated or given inconsistent descriptions of her "slip and fall" in her deposition, the jury will be assisted in finding the facts of the case. In that manner, Plaintiff's testimony may be discredited.

Omni emphasizes, as set forth *supra*, that under Federal Civil Rule 26, "the Court [has] discretion with respect to the nature and timing of disclosure of [discovery] material." Doc. 26, at 6. In support of its argument to delay production of the surveillance video, Omni cites *Hildebrand v. Wal-Mart Stores, Inc.*, 194 F.R.D. 432 (D. Conn. 2000), a negligence action by a store patron and her spouse against Wal-Mart for personal injuries sustained on store premises. In that case, plaintiffs had filed a motion to compel due to defendants' delay in responding to certain interrogatories regarding witnesses who allegedly had evidence of an undisclosed pre-existing medical condition of the injured patron. Magistrate Judge Margolis of this District denied plaintiffs' motion, finding defendants' postponement in production "appropriate" in light of the impeachment value of the evidence. In so holding, the court quoted *Weinhold v. Witte Heavy Lift. Inc.*, No. 90 CIV. 2096(PKL), 1994 WL 132392, at *1 (S.D.N.Y. April 11, 1994):

> In order to protect the value of surveillance tapes as a tool for impeachment of plaintiff's possible exaggeration of his disabilities, courts have found it appropriate to require disclosure of such impeachment materials only after plaintiff's deposition has been taken. In this way, the recording of plaintiff's sworn testimony will preclude any temptation on his part to alter his testimony based on what is seen on the

surveillance tapes, yet the policy of broad discovery is nonetheless maintained.

194 F.R.D. at 435 (quoting *Weinfeld*, 1994 WL 132392, at *1). Like the surveillance tapes in *Weinfeld*, the information regarding possible witnesses was appropriately produced *after* plaintiff's deposition to preserve its impeachment value.

In *Weinfeld*, a former employee brought an action seeking damages for injuries allegedly sustained while employed by defendant Witte Heavy Lift, Inc. ("Witte"). As in the case at bar, the plaintiff moved the court for an order compelling Witte to turn over all surveillance tapes of him. Before the motion to compel was filed, but after plaintiff's deposition was taken, Witte produced to plaintiff's counsel a copy of one surveillance tape taken of plaintiff, along with the report of the investigator who performed the surveillance. The court (Leisure, *D.J.*) denied plaintiff's motion to compel. The court first noted that "the rules of discovery were designed to encourage liberal pre-trial disclosure in order to make a trial 'less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" 1994 WL 132392, at *1 (quoting *Daniels v. Nat'l R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986). "However," the court clarified, "discovery requests are occasionally granted based only on certain contingencies." *Id.* One such contingency occurs when evidence may be used for impeachment: "In order to protect the value of surveillance tapes as a tool for impeachment of plaintiff's possible exaggeration of his disabilities, courts have found it appropriate to require disclosure of such impeachment materials only after plaintiff's deposition has been taken." *Id.* (citing *Daniels*, 110 F.R.D. at 161).

In *Weinfeld*, Witte had turned over the tape *after* plaintiff's deposition to preserve its use as an impeachment tool. *Id.*, at *2. The court found such disclosure to be "sufficient" because it gave the plaintiff the opportunity to examine the tape before trial and to prepare a cross-examination of

the investigator who made the tape.  *Id*.  In sum, "[t]his disclosure by defendants was the appropriate avenue of discovery for the parties to follow."  *Id.*

In the case at bar, Omni points out that Plaintiff's deposition is scheduled for September 24, 2019, and discovery will not close until January 24, 2020.  Doc. 26, at 8. Under those conditions, Plaintiff will have "almost 4 months to review any responsive impeachment materials, issue additional discovery (if any)  or seek additional depositions (if any)." *Id.*  Omni argues, therefore, that there will be "no apparent prejudice to be wrought by postponing the production of impeachment materials including video and surveillance until after Plaintiff's deposition." *Id.*  Omni maintains that "[t]he truth will best be served by, and Omni is entitled to, delay of production of impeachment materials including video and surveillance until after Plaintiff's deposition." *Id.*

### 3.    *Analysis*

In general, a "district court has broad discretion to direct and manage the pre-trial discovery process," and its discovery rulings are reviewed only "for abuse of discretion." *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir.2004).  *See also Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 93 (D. Conn. 2012).  In particular, timing of discovery may be addressed "by court order," Fed. R. Civ. P. 26.[7]  Moreover, pursuant to Rule 16, Fed. R. Civ. P., the Court has explicit discretion to set "the scope, timing, and extent of discovery and disclosures" after considering the parties' views and needs.  *See* Fed. R. Civ. P. 16 (c)(2)(F) (court may consider and take appropriate action, such as "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37"). *See* also Fed. R. Civ. P. 26(f) (advisory committee notes - 1993 amendment) ("The desirability of some judicial control of discovery can hardly be doubted. Rule 16,

---

[7]  *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(C) and (D); (c)(1)(B); and (d)(1).

. . . requires that the court set a time for completion of discovery and authorizes various other orders affecting the scope, timing, and extent of discovery and disclosures.")

In the case at bar, Omni requests leave to turn the surveillance video over to Plaintiff after its counsel takes her deposition on September 24, 2019. Omni plans to present the video as impeachment evidence so that the fact-finder may determine whether there are conflicts between Plaintiff's testimony regarding her "slip and fall" and the events as they appear on the video.

The Court is persuaded that delaying production of the video will be in the interest of justice, as discussed by Judge Leisure in *Weinhold v. Witte Heavy Lift. Inc.*, No. 90 CIV. 2096(PKL), 1994 WL 132392, at *1 (S.D.N.Y. April 11, 1994). As stated in that decision, it is "appropriate to require disclosure of such impeachment materials only after plaintiff's deposition has been taken" to eliminate the possibility that plaintiff's sworn testimony will be "altered based on what is seen on the surveillance tapes." In this manner, the video will be preserved as a "tool of impeachment," yet the "policy of broad discovery [will] nonetheless [be] maintained" in that the video will be turned over four months before the close of discovery. *Id.* Accordingly, there will be no prejudice in this brief delay of production.

As to timing for production of surveillance videos, the present holding comports with opinions within the Second Circuit. *See, e.g.*, *Daniels v. Nat'l R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986) ("[I]it may be appropriate to require disclosure of such impeachment materials only after the depositions of the plaintiff or other witnesses to be impeached, so that their testimony may be frozen."); *Sherrell Perfumes v. Revlon*, 77 F.R.D. 705, 707 (S.D.N.Y. 1977) (affirming Magistrate Judge's decision to postpone production of tape recordings before depositions of certain witnesses as neither "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A), nor

an "abuse of discretion"); *Wegrzyn v. Vital Recovery Servs., Inc.*, No. 06-CV-0086E (F), 2007 WL 4867584, at *1 (W.D.N.Y. Jan. 26, 2007) (ordering "that plaintiffs' motion for a protective order (Dkt.# 6) delaying disclosure of the audio tapes of defendant's representatives until after completion of the depositions of such representatives is hereby GRANTED"); *Poppo v. AON Risk Servs., Inc.*, No. 00 CIV. 4165 (HB), 2000 WL 1800746, at *1 (S.D.N.Y. Dec. 6, 2000) ("Second Circuit courts have delayed the production of audio or video tapes prior to one or more depositions in order to prevent the defendant or its witnesses from tailoring their testimony to conform with their prior recorded statements or actions.") (collecting cases).

Moreover, where the video evidence was to be used exclusively for impeachment purposes, courts have been more likely to allow a delay of production than if said video was primarily substantive evidence. *See, e.g.*, *Harrington v. Atl. Sounding Co.*, No. CV-06-2900 (NG) (VVP), 2011 WL 6945185, at *1 (E.D.N.Y. Dec. 30, 2011) ("[I]f the defendant intends to use the tapes for impeachment purposes only, courts usually do not require production to be made until after the plaintiff has been deposed.") (collecting cases); *Bachir v. Transoceanic Cable Ship Co.*, No. 98 CIV. 4625 JFK HBP, 1998 WL 901735, at *1 (S.D.N.Y. Dec. 28, 1998) ("[D]iscovery of impeachment surveillance videotapes is usually not permitted prior to the completion of plaintiff's deposition").[8]

After analyzing the facts presented, the Court exercises its discretion under Rule 26 to consider the parties' needs and control the timing of discovery. Omni's proffered intended use of the

_____

[8] *Cf. Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 357 (D. Conn. 2006) ("[T]o the extent the substantive value of the recorded evidence outweighs its impeachment value, a court should not delay its production pending the taking of a deposition."); *Brannan v. Great Lakes Dredge & Dock Co.*, No. 96 CV 4142, 1998 WL 229521, at *1 (S.D.N.Y. May 7, 1998) (noting that "[w]here surveillance materials are used for purposes beyond impeachment as 'substantive evidence,'" such materials must be produced before trial without a time limitation).

video evidence is central to the Court's decision to allow delayed production. Specifically, the only purpose Omni has asserted for the surveillance video is "impeachment" of Plaintiff's testimony of the facts. Doc. 24-5, at 4 ("Defendant objects to this interrogatory [No. 15] on the basis that it seeks information, if in existence, that is *purely of an impeachment nature* . . . .") (emphasis added); *see also* Doc. 26, at 6-8. Throughout its brief, Omni labels the video as "impeachment material." *Id.* Furthermore, Omni has agreed that it will turn the video over after Plaintiff's deposition, giving her four months to analyze it and request any follow-up discovery (depositions, interrogatories, production requests) before discovery closes. That way, the risk of gamesmanship resulting from possible unexpected facts revealed by the video may be avoided. The brief delay in production will create minimal prejudice in preparation of Plaintiff's case.

In so holding, the Court notes that Plaintiff's version of events in this case has not yet been recorded or placed in evidence; and Omni's counsel has averred that her statements regarding the severity of her medical condition have conflicted with her previously set plans to travel to Yale in September 2019. This apparent conflict gave rise to a vigorously-disputed controversy regarding the location for her deposition. As Omni argues, without viewing the video in advance, Plaintiff will have no opportunity to tailor her testimony to comport with events on the video, as recorded at the Omni Hotel on September 25, 2018. By allowing Omni to turn the video over to Plaintiff following her deposition, its impeachment value, if any, may thus be preserved.

As to Plaintiff's interests, her failure to examine the video before her deposition will not impair her testimony. She does not need the video to present the substantive evidence in her case. Plaintiff was necessarily present at her own "slip and fall" on September 25, 2018, so has personal knowledge of the relevant facts giving rise to her claim. She may testify as to her recollection of this

event, as pled in her Complaint, and thereafter have full access to Omni's surveillance video.

In sum, the interests of justice will be served by balancing the parties' needs – Omni's interest in preserving the video's impeachment value, if any, with Plaintiff's need to obtain access to all relevant evidence in the case. *See, e.g., Harrington* , 2011 WL 6945185, at *1 ("To balance the parties' competing interests, . . . if the defendant intends to use the tapes for impeachment purposes only, courts usually do not require production to be made until after the plaintiff has been deposed.") (collecting cases); *Bachir,*, at *1 ("As explained at length by Judge Chin in *Brannan v. Great Lakes Dredge & Dock Co.*, 96 Civ. 4142(DC), 1998 WL 229521 (S.D.N.Y. May 7, 1998), discovery of impeachment surveillance videotapes is usually not permitted prior to the completion of plaintiff's deposition. The rationale that underlies this practice is the need to ensure that a plaintiff does not tailor his or her testimony to minimize the impact of such videotape evidence.").[9]

The Court will grant in part and deny in part Plaintiff's motion to compel production of the surveillance video taken on September 25, 2018. Omni will be directed to produce the requested surveillance video, but not until the close of Plaintiff's deposition or within three (3) days thereafter.

### III. CONCLUSION

For the foregoing reasons, the Court enters the following Rulings on the motions addressed herein. Plaintiff's "Motion to Compel" [Doc. 24] is DENIED AS MOOT with respect to

---

[9] In *Brannan*, District Judge Denny Chin, as he then was, stated:

[D]espite the general rule of liberal pre-trial disclosure, surveillance videotapes may be protected from disclosure provided their use at trial is limited to impeachment. Disclosure of impeachment videotapes is warranted only if the party who has the tapes is afforded the opportunity to take the deposition of the surveilled party so that the position of that party to be impeached is committed.

1998 WL 229521, at *1 (citing *Martin v. Long Island R.R.*, 63 F.R.D. 53, 55 (E.D.N.Y.1974)).

21

Interrogatory No. 9 and Production Request No. 2, which request information and materials regarding Omni's written policies and procedures. The parties have resolved their dispute as to these items with an agreed upon "Protective Order" [Doc. 25] to govern and protect disclosure of Omni's trade secrets and various forms of business information.

Additionally, the Court hereby GRANTS Defendant's "Consent Motion for Protective Order" [Doc. 25] under Rule 26(c)(1)(G), Fed. R. Civ. P., pursuant to Omni's unopposed representation that there is "good cause" to protect its commercially sensitive information. The Court APPROVES AND ADOPTS the parties' proposed "Protective Order" [Doc. 25-1] and will enter it on the case docket. Nonetheless, the parties are reminded that the materials addressed in that Order are currently being exchanged *during discovery*; and if the parties wish to *seal* any particular document filed on the docket, they must file a proper motion to seal pursuant to Local Civil Rule 5(e).

Finally, the Plaintiff's "Motion to Compel" [Doc. 24] Omni to respond to Interrogatory No. 15 and Production Request No. 5, and thus to produce surveillance video of the lobby of the Omni Hotel on September 25, 2018, is GRANTED IN PART and DENIED IN PART.[10] To preserve such video's potential impeachment value and yet provide Plaintiff access to relevant evidence in the case, Omni is directed to produce all such video to Plaintiff either **at the close** of her deposition or within **three (3) days** thereafter. Upon receipt and review of that video, Plaintiff may, if so advised, request additional discovery (including depositions, interrogatories, and production requests) relating to said

---

[10]  Because Omni had already agreed to produce the surveillance video after Plaintiff's deposition, the Court finds that this is not a case where the imposition of sanctions would be just or appropriate upon the partial grant of Plaintiff's motion to compel. Omni's request to defer production till after Plaintiff's deposition was "substantially justified" so the present "circumstances [would] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

video.

It is SO ORDERED.

Signed: New Haven, Connecticut
        August 16, 2019

/s/Charles S.  Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge