UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HUI WANG,

          Plaintiff,

 v.

OMNI HOTELS MANAGEMENT
CORPORATION,

          Defendant.

Civil Action No.
3:18-cv-2000 (CSH)

JUNE 17, 2022

**RULINGS ON PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME [Doc. 70] and MOTION TO STRIKE DEFENDANT'S REPLY MEMORANDUM [73]**

**Haight, Senior District Judge:**

## I. INTRODUCTION

Plaintiff Hui Wang brings this personal injury action against Omni Hotels Management (herein "Defendant" or "Omni") for damages arising from a slip and fall she allegedly suffered on September 25, 2018, in the lobby of the Omni New Haven Hotel at Yale ("Omni Hotel"). She alleges that on that date, she "was caused to slip and fall on water that had accumulated on the floor," which caused her to land with "great force and violence," resulting in "severe injuries, damages and losses."[1] Doc. 1-1, ¶¶ 2-3. Due to her injuries, Plaintiff asserts that she "was forced to undergo

---

[1] In her "Complaint," Plaintiff itemized her "severe and painful injuries" as follows:

  a. mid shaft tibia fracture of the left leg;
  b. left leg pain;
  c. surgical scar on left leg;
  d. difficulty ambulating;
  e. insomnia; and
  f. a severe shock to her nervous system.

1

extensive medical care and treatment, and she may require additional medical care and treatment in the future." Doc. 1-1, ¶ 9.

Plaintiff initiated her negligence action against Omni in the Connecticut Superior Court for the Judicial District of New Haven on or about November 20, 2018. *Hui Wang v. Omni Hotel Management Corp.*, No. NNH-CV19-6086968-S (Conn. Super. Ct. Nov. 20, 2018). On December 6, 2018, Omni removed the case to this federal court pursuant to the federal removal statutes, 28 U.S.C. §§ 1441 and 1446 – within thirty days of service of the summons and Complaint upon it, on the basis of diversity of citizenship.[2] *See* 28 U.S.C. § 1332(a)(2). With the removal, Omni contemporaneously filed its Answer [Doc. 9] "denying all liability as a warning of the alleged dangerous condition had been placed in the lobby in the immediate vicinity of the front door entrance." Doc. 21 (Omni's Memorandum), at 1; Doc. 21-2 (photograph of lobby).

Pending before the Court at this time are Plaintiff's motion for an extension of time to respond to "Defendant's Motion to Strike Plaintiff's Rule 26 Disclosure of Expert Witnesses," filed

---

Doc. 1-1, (¶ 6(a)-(f)).

[2] "A party seeking removal predicated on diversity of citizenship must allege sufficient facts to show diversity both at the time of the commencement of the action in state court and at the time of removal." *CBS Inc. v. Snyder*, 762 F. Supp. 71, 73 (S.D.N.Y. 1991)(citing *Stevens v. Nichols*, 130 U.S. 230, 231 (1889)). On the dates the present action was commenced and removed, Plaintiff was a citizen of China (domiciled in Beijing), Doc. 1, ¶ 8. *See, e.g.*, *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile.") (citation omitted). On those dates, Omni, a corporation, was a citizen of Delaware and Texas (incorporated in Delaware with its principal place of business located in Dallas, Texas), Doc. 1, ¶¶ 9-10. *See* 28 U.S.C. § 1332(c)(1) (A corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."). Accordingly, the Court has federal "diversity of citizenship subject matter jurisdiction over this matter." *See* 28 U.S.C. § 1332(a)(2) (endowing the court with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – citizens of a State and citizens or subjects of a foreign state").

April 11, 2022 [Doc. 68 & 70], and Plaintiff's motion to strike "Defendant's Reply Memorandum" in support of Defendant's aforementioned "Motion to Strike" [Doc. 68, 69, 73, & 74]. The Court will resolve Plaintiff's two motions [Doc. 70 & 73] herein.

## II.  DISCUSSION

**A.  Plaintiff's Motion for an Extension of Time [Doc. 70]**

### 1.  Standard for Motion for Extension

In this District, Local Civil Rule 7(b) sets forth the standard to grant a motion for extension of time:

> All motions for extensions of time must be decided by a Judge and will not be granted except for good cause. The good cause standard requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension.

D. Conn. L. Civ. R. 7(b)(1).

Similarly, under Federal Rule 6 of Civil Procedure, a federal court may extend time "for good cause," as follows:

> b) Extending Time.
>
>> (1) In General. When an act may or must be done within a specified time, the court may, *for good cause*, extend the time:
>>
>>> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>>>
>>> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1) (emphasis added).

With respect to extending time, a district judge has broad discretion. As the Second Circuit has noted, "[t]he trial judge is closest to the parties and the facts, and we are very reluctant to

interfere with district judges' management of their very busy dockets." *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999). Accordingly, the Second Circuit only "review[s] the grant of an extension of time for abuse of discretion." *Manigault v. ABC Inc.*, No. 18-3133, 2019 WL 6340254, at *15 (2d Cir. Nov. 27, 2019) (citing *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers,* 415 F.3d 279, 283 (2d Cir. 2005)).

As to "good cause," the Second Circuit has found that "'[g]ood cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Manigault*, 2019 WL 6340254, at *15 (citation omitted). The Second Circuit has thus "explained" –

> [E]xcusable neglect is an "elastic concept [that] is not limited strictly to omissions caused by circumstances beyond the control of [the] movant." *LoSacco* [*v. City of Middletown*], 71 F.3d [88,] 93 [(2d Cir. 1995)] (internal quotation marks omitted). "[T]he inquiry into whether a failure to abide by a specified time constraint constitutes 'excusable neglect' is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,' including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond v. Int'l Bus. Machs. Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

*Petaway v. Osden*, 827 F. App'x 150, 152 (2d Cir. 2020) (lateral citations omitted).

**2. Arguments re: Plaintiff's Motion for Extension**

In the case at bar, Plaintiff moves for a twenty-one (21) day extension of time (from entry of this Ruling) to respond to Defendant's "Motion to Strike Plaintiff's Rule 26 Disclosure of Expert Witnesses" [Doc. 68], filed April 11, 2022. *See* Doc. 70. In Plaintiff's motion, her counsel, Attorney Michael P. Foley, Jr., explains that Defendant's motion to strike "was never served on [him] by the CMECF filing system." *Id.* ¶ 2. To prove this lack of service, he has provided the Court with "a screenshot from [his] computer verifying that an e-mail was never sent to [him] from the CMECF

4

filing system regarding defendant's Motion to Strike . . . ." *Id.*; *see also* Doc. 70-1 (Ex. A) (screen-shot of inbox of "AOL Mail" of "mpfesq@aol.com" from 12/14/2021 to 5/12/2022).

Attorney Foley explains that he only became aware of Defendant's "Motion to Strike" when he received an email from this Court's CM/ECF filing system on May 12, 2022, informing him that Defendant had filed a "Reply Memorandum" [Doc. 69] with respect to Defendant's "Motion to Strike" [Doc. 68].[3]  Doc. 70, at 2; Doc. 70-1 (Ex. B)(Notice of Electronic Filing).  Foley argues that "good cause exists for the granting of this motion for extension" because he did not receive timely notice of Defendant's motion to strike.  Doc. 70, at 2.  Accordingly, he could not respond within the requisite filing period.

As Foley notes, counsel for Defendant objects to the granting of the requested extension. *Id.*  With caustic fervor, Eli Jason ("Jack") S. Mackey, *pro hac vice* counsel for Omni, accuses Foley of "miss[ing] yet another deadline by a significant and consequential margin" and "seeking another bailout to allow him to file a late memorandum." Doc. 71, at 1.  In dramatic fashion, he declares, "Some might find [Foley's] call to a bailout within a bailout a fitting subject for a Christopher Nolan movie."[4] *Id.*

Mackey then calls into question Foley's honesty regarding lack of CM/ECF notice by declaring, in bold print, that "every other attorney on the distribution list received the Notice of Electronic Filing (NEF)."  *Id.*  To bolster this claim, Mackey attaches the NEF that said attorneys

---

[3]  The Court notes that Defendant filed this "Reply Memorandum" [Doc. 69] in support of its own "Motion to Strike" [Doc. 68], even though Plaintiff had filed no response to that motion.  The Court will address the "Reply Memorandum" *infra*.

[4]  The Court takes judicial notice that Christopher Nolan is a British film director whose movies are renowned for their cerebral, non-linear plots, such as those depicted in the science fiction films "Inception" (2010) and "Tenet" (2020).

received with respect to Omni's "Motion to Strike" [Doc. 68]. *See* Doc. 71, at 1, and Doc. 71-1 (Ex. A). Mackey then brusquely speculates that this evidence "begs the question":

> [I]s it more likely that every attorney on the CM/ECF distribution list got the NEF except the one now seeking an extension? Or is it more likely that the attorney who blatantly ignores Court ordered deadlines without explanation, disregards the Rules of Civil Procedure, and who consistently engages in improvident, unnecessary, and baseless filings (*see* Doc. Nos. 28, 30, 32, 63-65) simply missed or ignored the NEF as he has so many of the deadlines, orders, and Rules themselves?

Doc. 71, at 2.[5]

Further questioning Foley's integrity, Mackey argues that even if Foley experienced "some issue with [his] own e-mail/computer system," that is "no excuse" for needing an extension. *Id.* He thus asserts that Plaintiff's motion for extension "fails to meet the excusable neglect standard, let alone the good cause standard specified by this Court." *Id.* Mackey then equates Foley's failure to file (for lack of electronic service) to the "classic-dog-ate-my homework excuse," as discussed by Judge Henderson in *Fox v. American Airlines*, 389 F.3d 1291, 1294 (D. C. Cir. 2004).

In *Fox*, appellants claimed that "as the result of a malfunction in the district court's CM/ECF electronic case filing system, their counsel never received an e-mail notifying him of American's motion to dismiss their amended complaint." 389 F.3d at 1294. Rejecting this "classic 'my dog ate my homework' line," the court stated, "[i]mperfect technology may make a better scapegoat than the family dog in today's world, but not so here." *Id.* Accordingly, appellants' counsel's "effort at

---

[5] From the case docket, it appears that Foley's accusations regarding late filings by Plaintiff are unsubstantiated. Plaintiff moved to extend the time to complete discovery and to extend the trial date in this action. Doc. 44 & 55. Both motions were granted for good cause. Doc. 58 (granting requested extensions "[i]n light of the extraordinary circumstances resulting from the pandemic of the coronavirus," which resulted in " President Trump's Order of January 31, 2020, suspending travel by Chinese citizens to this country, and Governor Lamont's Executive Order, to become effective March 23, 2020, mandating that all non-essential businesses in Connecticut 'employ, to the maximum extent possible... telecommuting or work from home procedures'").

explanation, even taken at face value, [was] plainly unacceptable." *Id.*   Key to the court's holding in *Fox* was the fact that counsel should have been monitoring the docket for an answer to the amended complaint and had even electronically filed a subsequent joint report without noting the motion to dismiss on the case docket.[6] *Id.* at 1293-94.

Plaintiff distinguishes *Fox* from the present case by emphasizing that he is "not claiming that his computer was malfunctioning or that he has not received notices from the CM/ECF system in the past." Doc. 72, at 3.  Such was "not the situation in this case." *Id.*  He simply "never received a copy of Defendant's Motion to Strike." *Id.*  The Court also observes that, unlike appellants' counsel in *Fox*, Plaintiff's counsel filed no pleadings in the interim between Defendant's motion to strike and the present motion for extension.  He only received notice of the motion to strike when he learned of Defendant's subsequent "Reply Memorandum," so there is no indication that he accessed the case docket prior to that reply and either ignored or overlooked the motion to strike.[7]

To counter Plaintiff's lack of notice argument, Omni's counsel quotes the Second Circuit for the proposition that "[p]arties have an obligation to monitor the docket sheet to inform themselves of the entry of orders…. " Doc. 71, at 3 (quoting *United States ex rel. McAllan v. City of New York*,

---

[6] Plaintiff's counsel argues that the *Fox* case is distinguishable from the one at bar because "there were no court deadlines where dispositive motions were due nor [was he] claiming that his computer was malfunctioning . . . ." Doc. 72, at 5.  He had "received all e-mails in the past through the CM/ECF filing system and therefore did not suspect that there would be a problem receiving [such ] emails . . . ." *Id.*

[7] In *Fox*, the appellate court mentioned that appellants' counsel filed a joint "meet and confer" statement, with  a proposed scheduling order, *after* the motion to dismiss had been filed. Yet, counsel had not even noticed the motion to dismiss on the docket.  "'[H]ad [plaintiffs' counsel] checked the docket when filing the joint statement,' the [district court] observed, 'he would have noticed that the defendant had filed a motion to dismiss the amended complaint approximately five and a half weeks earlier.'" 389 F.3d at 1293.

248 F.3d 48, 53 (2d Cir. 2001)).  He further supports this position by quoting this District's Electronic Filing Policies and Procedures ("Policies and Procedures") at paragraph VII.D., which, "strongly encourage[s]" counsel – "[i]n addition to receiving e-mail notifications of filing activity" – to "sign on to the CM/ECF System at regular intervals to confirm the accuracy of the docket in their case." Doc. 71, at 3 (quoting Policies and Procedures, ¶ VII.D.).

Defendant's counsel concludes that Foley failed to "follow this 'strongly encouraged' recommendation, having missed [Omni's] filing [of its motion to strike] for over a month." Doc. 71, at 4.  Moreover, "counsel for Omni gave notice to Plaintiff's counsel of its intention to file the motion and seek sanctions."  *Id.*  Such notice should have "prompt[ed] him to check the court's docket for any recent filings." *Id.* (citation omitted).

In further support of his opposition to Plaintiff's requested extension, Omni's counsel then provides a number of case authorities outside the Second Circuit in which the court held that late or incomplete responses to motions, resulting from computer issues, filer's technical failures, and/or computer illiteracy, were not acceptable. *Id.* at 4-5 (citing, inter *alia, Harman v. McAfee,* 302 Ga. App. 698, 700–01, 691 S.E.2d 586, 589 (2010) (court denied counsel right to respond to summary judgment motion *nunc pro tunc* where notice of motion was delivered to counsel's LexisNexis online in-box, rather than his email account (which had become full), "and, as counsel acknowledged, he did not check the LexisNexis file serve in-box for filings during the period in question"); *Satterlee v. Allen Press, Inc.*, 455 F. Supp. 2d 1236, 1246  (D. Kan. 2006) (court held "technical errors" on the filer's end did not excuse untimely filing where plaintiff's counsel's legal assistant received error message when attempting to file supporting documents with summary judgment response and then failed to file the documents "conventionally or via fax"); *Robinson v.*

8

*Wix Filtration Corp. LLC*, 599 F.3d 403, 408 (4th Cir. 2010) (appellate court affirmed district court's ruling, declining to vacate judgment to allow plaintiff's counsel to file late summary judgment response, where counsel was aware that he and other members of his firm were experiencing computer problems, which made electronic access impossible, during period in which he "knew full well that the deadline for dispositive motions was pending"); *Arrington v. La Rabida Children's Hosp.*, No. 06 C 5129, 2009 WL 928922, at *3–4 (N.D. Ill. Apr. 3, 2009) (court rejected plaintiff's counsel's untimely notice of appeal where counsel took "the position that he is computer-illiterate and cannot use a computer in any way, and is thus incapable of learning how to e-file").

In response to Defendant's arguments, Plaintiff points out that in *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir. 2001), cited by Omni, counsel were awaiting the entry of orders they wished to appeal. Counsel thus had a duty to monitor the docket for the court's anticipated orders, "which did not occur in this case." Doc. 72, at 4. Thereafter, in ruling on a bankruptcy appeal, Judge Arterton of this District cited *United States ex rel. McAllan* for the limited proposition that "parties have an obligation to monitor the docket sheet to inform themselves of the *entry of orders they wish to appeal*." Doc. 72, at 4 (quoting *In re Romaniello*, 265 B.R. 349, 351 (D. Conn. 2001) (emphasis added).[8]

Furthermore, in *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403 (4th Cir. 2010),

---

[8] In addition, in *Romaniello*, "counsel's initial failure to monitor the Court's docket with respect to the docketing of the appeal was excused." 265 B.R. at 351. However, when counsel failed to then address the motion to dismiss the appeal, he actually admitted that his failure was "because of the sheer press of business . . . and frankly, the sheer frustration with this particular case,'" which "while perhaps candidly accurate, d[id] not provide a basis for permitting the untimely filing of appellant's brief." *Id.*

9

Plaintiff's counsel failed to respond to a summary judgment motion due to his computer problems of which he was aware. Doc. 72, at 4. The Fourth Circuit in *Robinson* stated that it did "not . . . impose upon lawyers a duty to monitor court dockets." *Id.* (quoting *Robinson*, 599 F.3d at 408 n.7). Rather, it acknowledged that there are some "circumstances" in which lawyers have an obligation to "pay attention," and that "[c]omputer inaccessibility of which only counsel is aware, in a district requiring electronic filing, and during a time frame in which counsel is aware that dispositive motions are due, is certainly such a circumstance." Doc. 72, at 4 (quoting *Robinson*, 599 F.3d at 408 n.7).

According to Plaintiff's counsel, unlike in *Robinson,* he did not have an improperly functioning computer, much less a computer problem of which he was aware. Doc. 72, at 5. He also does not suggest that: (1) he purposely failed to check his emails in a separate inbox, as in *Harman*; (2) he experienced a technical failure in filing, as in *Satterlee;* or (3) he lacks the skills necessary to use his computer, as in *Arrington*.[9] *Id.* at 7. It thus follows that none of Defendant's proffered cases is apposite.

As to receipt of notice of the motion to strike, Plaintiff clarifies that Defendant cites Doc. 69-2, an exhibit to its improperly filed "Reply Memorandum" to the motion to strike.[10] Doc. 72, at 6. That "Reply" was the filing that actually notified Plaintiff that a motion to strike had already been filed. Upon learning of the motion to strike, Plaintiff filed the present motion for extension the

---

[9] Plaintiff's counsel has also produced evidence that "this is not a situation where the email from the CM/ECF filing system went into the spam folder" in his computer. Doc. 72, at 5. As proof, he has filed a "screenshot" showing the emails in his "spam" folder from February 21, 2022, to April 22, 2022 – the period covering April 11, 2022, the filing date of the motion to strike. Doc. 72-2 (Ex. B).

[10] *See* note 3, *supra.*

following day. Moreover, any prior notice of a motion to strike pertained to a possible motion and *not an impending order* of the Court, which would more likely require monitoring the docket. *Id.*

Finally, Omni's counsel chafes at the length of Plaintiff's requested extension – twenty-one (21) days after a ruling on the motion itself. Doc. 71, at 5. Labeling that time frame as "outrageous," he notes that the deadlines for discovery (May 20) and likely for dispositive motions (June 24) would have to be extended, which is "prejudicial to Omni." *Id.* at 5-6.

In contrast, Plaintiff emphasizes the "seriousness of the issues raised in the Defendant's Motion to Strike" to request the opportunity to respond to that motion. Doc. 72, at 7-8. In Defendant's own words, that motion "requests that Plaintiff be prohibited from offering *any* expert testimony at trial of this matter . . . ." Doc. 74, ¶ 5 (emphasis in original). Because Plaintiff finds expert testimony central to her case, she stresses the importance of the motion's substance to her case, as opposed to focusing on the length of the requested extension.

**3. Analysis**

The Court concurs with Omni's counsel that, as per its "Electronic Filing Policies and Procedures" ("Policies and Procedures"):

> In addition to receiving e-mail notifications of filing activity, counsel is strongly encouraged to sign on to the CM/ECF System at regular intervals to confirm the accuracy of the docket in their case.

Policies and Procedures ¶ VII. D. Counsel are thus generally responsible to be aware of filings on the case docket by signing into CM/ECF at regular intervals. Moreover, counsel should maintain functioning computers with operational platforms, internet connections, software systems, and electronic mail, to file documents and receive notices of filings by the Court. *See id.* ¶¶ 1-5 (System Requirements) and IV.A. ("E-mail Notification").

11

With respect to extensions of time, a party may request such an extension upon a particularized demonstration of "good cause" – *i.e.*, that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension.  D. Conn. L. Civ. R. 7(b)(1).  Moreover, pursuant to Federal Rule 6 (b)(1)(B) of Civil Procedure, the "court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

"The term 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Dixon v. A Better Way Wholesale Autos, Inc.*, 692 F. App'x 664 (2d Cir. 2017) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 74 (1993)). Furthermore, in the Second Circuit, to determine whether neglect was "excusable," the court considers: "(1) the danger of prejudice to the [non-movant], (2) the length of the delay and its potential impact on judicial proceedings,(3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."  *Dixon*, 692 F. App'x at 665 (quoting *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 83 (2d Cir. 2013)).

In the case at bar, exercising the broad discretion with which a district court is endowed, this Court finds "good cause" to grant the requested extension due to Plaintiff's counsel's excusable neglect. It remains true that a notice generated on the Court's filing system indicated that "Defendant's Motion to Strike and Exclude Plaintiff's Experts" [Doc. 68] was "electronically mailed to: Michael P. Foley, Jr[.]  mpfesq@aol.com" on April 11, 2022, at 4:00 p.m. However, Attorney Foley attests to the fact that although he had a functioning computer, he did not receive an NEF regarding that filing. As proof, he has attached to his motion for extension "screenshots" of his

"AOL" email inbox and spam folder which include the relevant date of April 11, 2022, showing no entry for an NEF related to "Defendant's Motion to Strike." Doc. 72-1, 72-2.

With respect to the applicable factors regarding excusable neglect, first, as to potential prejudice to Omni, the Court will shorten Plaintiff's extension to file her response from twenty-one (21) to fourteen (14) days. Second, in that way – by reducing the length of delay to two weeks – the Court will diminish the potential impact of the extension on these proceedings.

Third, as to the reason for delay, although the failure of an NEF delivery to a valid email account is a rare occurrence, such an event is neither impossible, nor even implausible. If such a glitch occurred, and absent a check of the case docket on April 11, 2022, the delay was not within the control of Attorney Foley. Lacking service of the motion to strike, he could not respond to a pleading he did not know had actually been filed.[11] Attorney Mackey may argue that Plaintiff was forewarned that such a filing would occur; but until such a filing was made, there was no guarantee that Omni would actually move to strike. Legal strategies change from day to day, and lie solely within the hands of parties and their learned counsel.

Fourth and finally, there is no proof that Attorney Foley did not act in "good faith." At most, he was negligent in failing to consult the case docket more frequently. Once he learned of Defendant's motion to strike, he requested an extension to respond the next day. Moreover, despite insults, invectives, and accusations levied by Mackey, Foley has retained a relative level of reasoned

---

[11] As other Districts within this Circuit have clarified in their rules on electronic filing, service is not generally complete until all parties receive a Notice of Electronic Filing. *See, e.g*, E.D.N.Y. Local Civil Rules ¶ 5.2 ("Service is complete provided all parties receive a Notice of Electronic Filing (NEF)."); S.D.N.Y. Electronic Case Filing Rule 9.1 ("In cases assigned to the ECF system, service is complete provided all parties receive a Notice of Electronic Filing (NEF), which is sent automatically by email from the Court.").

calm.[12]  In that way, he has asserted his position in straightforward fashion, displaying no malice toward Defendant and no intent to impede these proceedings.

As one Judge in this Circuit noted, in this age of technology, one cannot rely on seamless electronic communication:

> The fact is that all sorts of things go awry in the electronic universe in which we now live, and lawyers are obliged to protect their clients' interests even if that requires something more than blind reliance on the proper and timely transmission, receipt and filing of computer generated electronic mail.

*Pinks v. M & T Bank Corp.*, No. 13 CIV. 1730 (LAK), 2014 WL 2608084, at *1 (S.D.N.Y. June 5, 2014).  Despite this Court's present finding of excusable neglect, to ensure timely notice of filings, it is incumbent on attorneys to check their online case dockets on a regular basis and thereby avoid the type of problem addressed by Plaintiff's motion for extension.  Although Attorney Foley appears to be a solo practitioner, with likely fewer resources than a large firm, he should take time to monitor his case dockets at regular intervals.[13]

On this occasion, despite arguable negligence by Plaintiff's counsel, the importance of the issues contained in Defendant's motion to strike militate toward allowing Plaintiff to respond.  In the

---

[12] For example, Mackey accuses Foley of "seeking another bailout to allow him to file a late memorandum," "blatantly ignor[ing] Court ordered deadlines without explanation, disregard[ing] the Rules of Civil Procedure," and "consistently engag[ing] in improvident, unnecessary, and baseless filings." Doc. 71, at 2.  As discussed above, Mackey also accuses Foley of deceptively offering "the legal equivalent to the classic-dog-at-my-homework excuse." *Id.*

[13] *See Pinks v. M & T Bank Corp.*, No. 13 CIV. 1730 (LAK), 2014 WL 2608084, at *2 (S.D.N.Y. June 5, 2014) (noting that "a mistake like this on the part of an overwhelmed single practitioner might be excused," but not "where Counsel [was] a partner in one of the world's mega-law firms which, according to its web site, has over 1,900 lawyers located in offices in ten countries and having fourteen U.S. offices").

interests of justice, both parties will be heard. That way, the papers of each side may assist the Court to resolve the motion.

In these circumstances, the Court will grant a fourteen (14) day extension for Plaintiff to respond to Defendant's Motion to Strike [Doc. 68]. This extension will, however, be *peremptory* – absent compelling reasons, no further extensions are likely to be granted.

**B. Plaintiff's Motion to Strike Defendant's Reply Memorandum [Doc. 73]**

Also pending before the Court is Plaintiff's motion to strike a "Reply Memorandum" [Doc. 69] filed by Defendant in support of Defendant's "Motion to Strike Plaintiff's Rule 26 Disclosures of Expert Witnesses" [Doc. 68]. As Plaintiff points out, this self-styled "Reply Memorandum" has been filed even though "Plaintiff never filed an objection to Defendant's Motion to Strike [Doc. 69]." Doc. 75, at 1.

Accusing Plaintiff of "continued disregard for Court ordered deadlines," Defendant admits in this "Reply," that Plaintiff "failed to file or serve a response to Omni's Motion." Doc. 69, at 1. Speculating on the reason for Plaintiff's lack of a response, Defendant posits that "Plaintiff had no good faith basis for opposing Omni's motion."[14] *Id.* at 2. Moreover, he suggests that her "lack of opposition to Omni's Motion to Strike be deemed as consent to the motion." Doc. 74 (Defendant's Opposition Brief), ¶ 2; *see also id.* ("Plaintiff's failure to file an opposition brief *was* her response. . . . Omni's reply is related to [Plaintiff's lack of opposition] insofar as it simply alerted the Court to that fact.") (emphasis in original).

Omni's counsel also boldly accuses Plaintiff of "additional delinquent and noncompliant

---

[14] The Court notes that Defendant's assumption that Plaintiff believes she has no basis to respond is flawed. Otherwise, her counsel would not have made the present motion for extension to respond [Doc. 70].

activity," Doc. 69, ¶ 6, and "another ironic and bewildering move," Doc. 74, ¶ 1, while completely disregarding the fact that his very "Reply Memorandum" is a violation of this Court's Local Civil Rule 7(d). That rule states in pertinent part:

> Any reply memorandum . . . must be filed within fourteen (14) days of the **filing of the responsive memorandum** to which reply is being made, as computed under Fed. R. Civ. P. 6. A reply memorandum may not exceed 10 pages. A reply memorandum must be strictly confined to a **discussion of matters raised by, and must contain references to the pages of, the memorandum to which it replies.**

D. Conn. L. Civ. R. 7(d) (emphases added).

Both logic and the actual wording of the applicable rule dictate that there can by no "reply" to a non-existent response. Instead, this self-styled "reply" is an expansion of the Defendant's Motion to Strike. As Plaintiff argues, "despite the fact that the Plaintiff did not file a memorandum in opposition to Defendant's Motion to Strike, the Defendant raises additional issues in its Reply Memorandum that were not addressed in Defendant's Motion to Strike." Doc. 73-1, at 2. For example, Defendant claims in its Reply that Plaintiff's two Supplemental Disclosures of Expert Witnesses regarding Douglas Fisher (dated April 12, 2022) and Dr. Brad Yoo (dated May 10, 2022) are untimely and should be stricken.[15] *Id.* However, the issues addressed in Defendant's Motion to Strike [Doc. 68] concern exclusively *other disclosures* of expert witnesses (dated October 24, 2019, and April 6, 2022).[16] *Id.*; *see also* Doc. 68-2 and 68-3 (Plaintiff's Rule 26 Disclosures of Expert

---

[15] In a follow-up "Opposition" to Plaintiff's motion to strike Defendant's Reply Memorandum, Defendant argues that these newly listed, supplemental disclosures were simply "additional examples of improper conduct." Doc. 7, ¶ 4. However, Defendant possesses no grounds to "reply" in the absence of a response by Plaintiff.

[16] These expert witnesses mentioned in Defendant's "Motion to Strike" [Doc. 68] include an EMT and a paramedic of American Medical Response; firefighters in the New Haven Fire Department; Brad J. Yoo, M.D. of Yale Medicine Orthopaedics & Rehabilitation; medical personnel of the Civil Aviation General Hospital in Beijing, China; and Douglas A. Fisher, P.E., of Consulting

16

Witnesses). A party cannot raise an issue for the first time in a reply brief. *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("[N]ew arguments may not be made in a reply brief, and we decline to entertain the theories so proffered.") (internal citation omitted); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir.1993) ("Arguments may not be made for the first time in a reply brief.").

This so-called "Reply" is thus Omni's improper addendum to "Defendant's Motion to Strike Plaintiff's Rule 26 Disclosures of Expert Witnesses" [Doc. 68]. It simultaneously enables Defendant to: (1) accuse Plaintiff once more of failing to follow rules and (2) substantively broaden Defendant's Motion to Strike in defiance of Local Civil Rule 7(d). It appears that Omni, a vocal martinet for rule-compliance, is nonetheless willing to violate Rule 7 to augment its "Motion to Strike."[17] Consequently, Omni's "Reply Memorandum" contains no "discussion of matters raised by," much less "references to the pages of," a responsive memorandum, which has yet to be filed. D. Conn. L. Civ. R. 7(d).

Lastly, even if there had been a filed "response" to warrant a "reply," this specific "Reply Memorandum" arguably grossly exceeds Local Rule 7(d)'s ten (10) page filing limit. *Id.* The text of the brief may be six (6) pages in length, but Omni appends an unusually large number of exhibit pages – *i.e.*, no less than eighty-seven (87) pages of exhibits, compiling ninety-three (93) pages in total.

---

Engineer.  Doc. 68-2, 68 -3.

[17] It is patently ironic that Attorney Mackey, who paints himself a stickler for procedural compliance, has filed a reply to a pleading that does not exist. Rather than following this District's explicit Rule 7(d) governing "Reply" briefs, he has "jumped the gun," espousing arguments to rebut those Plaintiff never made. One might query whether Christopher Nolan would condone such conceptual, pre-conceived, even imaginary arguments.

In sum, in the absence of a response to "Defendant's Motion to Strike Plaintiff's Rule 26 Disclosures of Expert Witnesses" [Doc. 68], the Court will strike the Defendant's premature "Reply Memorandum" from the case docket. Upon Plaintiff's filing of a response, Omni may, if so advised, file a true "reply" to that pleading in conformance with Local Civil Rule 7(d) – within fourteen (14) days, no longer than ten (10) pages, and addressing only arguments contained in Plaintiff's response (complete with page references thereto).

### III. CONCLUSION

For the foregoing reasons, "Plaintiff's Motion for an Extension of Time" [Doc. 70] is GRANTED. Plaintiff must respond to "Defendant's Motion to Strike Plaintiff's Rule 26 Disclosure of Expert Witnesses" [Doc. 68] on or before **July 1, 2022.**

Due to Defendant's failure to comply with Local Civil Rule 7(d), "Plaintiff's Motion to Strike Defendant's Reply Memorandum" [Doc. 73] is GRANTED. The Court hereby STRIKES Defendant's "Reply Memorandum" [Doc. 69] from the case docket. Defendant may reply to Plaintiff's response once that pleading has been filed and provided that said reply conforms with the requirements of Local Civil Rule 7(d) in timeliness, length, and substance.

Finally, the Court notes with disapproval that counsel's motion practice, and especially that by Mr. Mackey, has devolved into an antagonistic pattern, including hyperbole and ad hominem attacks. The Court finds it graceless, bordering on unprofessional, for counsel to address opposing parties in vitriolic terms.[18] Moreover, needless skirmishing results in lengthened briefs, speculative

---

[18] For example, in his "Opposition" [Doc. 74] to Plaintiff's "Motion to Strike" [Doc. 73], Mackey accuses Plaintiff of "yet another ironic and bewildering move." Doc. 74, ¶ 1. While violating Local Civil Rule 7(d) himself, he has the temerity to state that "[i]t would be unsurprising if Plaintiff did not actually read Local Rule 7(d) before citing it." *Id.* ¶ 2. He also argues that "Plaintiff simply ignored the contents of Omni's Motion to Strike with as much fervor and

arguments, and delays. Both counsel are advised to focus their efforts on the interests of their clients, cooperating fully and expeditiously to complete these proceedings.

It is So ORDERED.

Signed: New Haven, Connecticut
June 17, 2022

>  /s/Charles S. Haight, Jr.
>  CHARLES S. HAIGHT, JR.
>  Senior United States Judge

---

indifference as she does the orders, rules and deadlines of this Court." *Id.* ¶3. Similarly, he accuses Plaintiff of "simply enjoy[ing] requiring the Court and parties to use their time and resources to continually entertain Plaintiff's entirely pointless motions." *Id.* ¶ 7. Such hostile assertions are inflammatory and extraneous to legal argument. Not only do they fail to assist the Court, they create unnecessary tension between parties, impeding the proceedings.