**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

HUI WANG,

               Plaintiff,

   v.

OMNI HOTELS MANAGEMENT
CORPORATION,

              Defendant.

Civil Action No.
3:18-cv-2000 (CSH)

**MARCH 6, 2025**

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. 79]**

**Haight, Senior District Judge:**

## I.  INTRODUCTION

Plaintiff Hui Wang commenced this personal injury action against Omni Hotels Management (herein "Defendant" or "Omni") seeking damages resulting from a slip and fall she allegedly suffered on September 25, 2018, in the lobby of the Omni New Haven Hotel at Yale ("Hotel"). Specifically, Plaintiff alleges that she fell due to "water that had accumulated on the floor" and that she landed with "great force and violence," resulting in "severe injuries, damages and losses."[1] Doc. 1-1, ¶¶ 2-3.

---

[1] In her "Complaint," Plaintiff itemized her "severe and painful injuries" as follows:

  a.  mid shaft tibia fracture of the left leg;
  b.  left leg pain;
  c.  surgical scar on left leg;
  d.  difficulty ambulating;
  e.  insomnia; and
  f.  a severe shock to her nervous system.

Doc. 1-1, (¶¶ 6(a)-(f)).

1

Plaintiff asserts that the injuries she incurred "forced [her] to undergo extensive medical care and treatment, and she may require additional medical care and treatment in the future." Doc. 1-1, ¶ 9.

Plaintiff's present action was removed to this federal court from state court. She originally filed this negligence suit against Omni in the Connecticut Superior Court for the Judicial District of New Haven on or about November 20, 2018. *Hui Wang v. Omni Hotel Management Corp.*, No. NNH-CV19-6086968-S (Conn. Super. Ct. Nov. 20, 2018). On December 6, 2018, Omni removed the case to this federal court pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of diversity of citizenship.[2] *See* 28 U.S.C. § 1332(a)(2). In addition to removal papers, Omni filed an Answer [Doc. 9], "denying all liability" because "a warning of the alleged dangerous condition had been placed in the lobby in the immediate vicinity of the front door entrance." Doc.21 (Omni's Memorandum), at 1; Doc. 21-2 (photograph of lobby).

Pending before the Court at this time is Defendant's Motion for Summary Judgment [Doc. 79], requesting dismissal of Plaintiff's Complaint pursuant to Federal Rule 56 of Civil Procedure and Local Civil Rules 7 and 56. Defendant moves for dismissal of the Complaint, arguing that Plaintiff has failed to establish the elements of premises liability as a matter of law. Furthermore, Omni asserts that it has "discharged its duty as a matter of law by providing a warning of the alleged dangerous condition." Doc. 79-2, at 27. The Court resolves this summary motion judgment herein.

---

[2]  Pursuant to 28 U.S.C. § 1332(a)(2), the Court has federal "diversity of citizenship" subject matter jurisdiction in this action. On the dates the present action was commenced and removed, Plaintiff was a citizen of a foreign state, China (domiciled in Beijing), Doc. 1, ¶ 8; and Omni, a corporation, was a citizen of Delaware and Texas (incorporated in Delaware with its principal place of business located in Dallas, Texas), Doc. 1, ¶¶ 9-10. *See* 28 U.S.C. §§ 1332(a)(2), (c)(1).

## II.  STANDARD FOR SUMMARY JUDGMENT

The standard for granting summary judgment under Federal Rule 56 of Civil Procedure is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 413 (2d Cir. 2024) ("Summary judgment is proper when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.") (quoting *Loomis v. ACE Am. Ins. Co.*, 91 F.4th 565, 572 (2d Cir. 2024), *certified question accepted*, 42 N.Y.3d 1044, 249 N.E.3d 37 (2024)); *Peterson v. Bank Markazi*, No. 15-690-CV, 2024 WL 4758719, at *16 (2d Cir. Nov. 13, 2024) ("Summary judgment is warranted 'only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'") (quoting *Brandon v. Royce*, 102 F.4th 47, 54 (2d Cir. 2024)).

First, "summary judgment may not be granted unless 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing and quoting  Fed. R. Civ. P. 56).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)  (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)).

Second, with respect to the burden of proof, "[t]he movant has the burden of showing that there is no genuine issue of fact . . . ." that would warrant a trial. *Liberty Lobby,* 477 U.S. at 256. To meet that burden, the moving party may show—*i.e.*, point out to the district court—"that there

3

is an absence of evidence to support the nonmoving party's case." *PepsiCo., Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002) (citation omitted).  In other words, "the moving party [must] demonstrate that no genuine issue respecting any material fact exists." *Gallo*, 22 F.3d at 1223 (citation omitted). In this context, "[a] material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs 'if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 220 (2d Cir. 2023)(quoting *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 72 (2d Cir. 2022)).

Third, in determining whether there are genuine issues of material fact, the court  "resolv[es] all ambiguities and draw[s] all permissible inferences in favor of the nonmoving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020) (citing *Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019)).  *See also See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) (given its "prophylactic function," summary judgment is a "drastic device," so that "a district court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion").

Nonetheless, the non-movant is not "relieved of his own burden of producing in turn evidence that would support a jury verdict."   *Liberty Lobby*, 477 U.S. at 256.  Pursuant to Federal Civil Rule 56(e), "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  477 U.S. at 256.  The plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment[;]" and "[t]his is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had

a full opportunity to conduct discovery." *Id.* at 257.  "[W]here a movant has shown the existence of a material fact and the nonmovant wishes to challenge it, the nonmovant bears the burden of production to point to 'significant probative evidence' (that is, more than 'a scintilla of evidence') from which a reasonable factfinder could find for the nonmovant." *Gov't Emps. Ins. Co.,* 121 F.4th at 413–14 (citing *Liberty Lobby*, 477 U.S. at 249, 252).[3]

Therefore, in opposing summary judgment, one "may not rely on mere allegations or denials, but rather must 'cit[e] to particular parts of materials in the record' to demonstrate that a fact is genuinely disputed." *Eaddy v. City of Bridgeport*, No. 09CV1836 (MRK), 2011WL 1399031, at *3 (D. Conn. April 12, 2011) (quoting  Fed. R. Civ. P. 56(c)(1)). There must be more than a "scintilla of evidence" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 252. "[M]ere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)(quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980))(internal quotation marks omitted).  Furthermore, "metaphysical doubt" will not suffice. *Matsushita Elec. Indus. Co.*, 475 U.S. 586–87.

Fourth and finally, "the moving party may obtain summary judgment by showing that little

---

[3]  *See also Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) ("The party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) ("While doubts must be resolved in favor of the party opposing the motion, the opposing party must provide 'concrete particulars' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to that motion.'") (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

or no evidence may be found in support of the nonmoving party's case." *Gallo,* 22 F.3d at 1223–24 (citations omitted).   Therefore, if the evidence presented by the non-movant is "merely colorable, or is not significantly probative," summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).  In addition, "the mere existence of *some* alleged factual dispute between the parties" alone "will not defeat a properly supported motion for summary judgment." *Id.* at 247–48.

### III.  FACTS

Under this District's  Local Civil Rule 56(a), when ruling on summary judgment, the Court considers only evidence that is admissible. *See* D. Conn. L. Civ. R. 56(a)1 (court may only consider statements of fact that are "supported by the evidence"); *Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir.2003).  Courts, such as this one, "undertake this obligation faithfully and fully review the proffered evidence of record and draw appropriate conclusions." *Ricci v. Destefano*, No. 3:04 CV 1109 (JBA), 2006 WL 2666081, at *3 (D. Conn. Sept. 15, 2006).  Specifically, "the court knows the difference between admissible and non-admissible evidence, and w[ill] not base a summary judgment decision simply upon the self-serving *ipse dixit* of a particular party." *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 231 (D. Conn. 2008).

The Court sets forth below the facts necessary to an understanding of the relevant issues raised in Defendant's summary judgment motion and the decision rendered upon it. These facts are derived from the parties' submissions, including, *inter alia*, the pleadings, the parties' Local Rule 56(a)1  Statements, supporting affidavits, and exhibits and documents on file in the case record.[4]

---

[4]  Pursuant to Local Civil Rule 56(a)1, "[a] party moving for summary judgment shall file and serve with the [summary judgment] motion and supporting memorandum a document entitled 'Local Rule 56(a)1 Statement of Undisputed Material Facts,'" setting forth "a concise statement of

On or about September 25, 2018, at approximately 7:40 p.m., Plaintiff fell as she came through the front door into the lobby of the Omni New Haven Hotel ("Hotel"). Doc. 79-1 ("Defendants' Statement of Undisputed Material Facts"), ¶¶ 1-2. At that time, the weather was rainy, and Plaintiff alleges that when she walked onto the lobby floor, she "was caused to slip and fall on water that had accumulated on the floor, causing her to land on the floor and . . . to sustain various injuries, damages and losses." *Id.* ¶ 1; Doc. 93 (Plaintiff's Local Rule 56(a)(2) Statement"), ¶ 1.

The front entrance of the Hotel is served by a valet area under a porte-cochere. Doc. 79-1, ¶ 2 (citing Omni witness deposition transcripts: Doc. 79-3, Deposition of Kristen Perkins ("Perkins Depo."), at 64: 11-17; Doc. 79-4, Deposition of Veronica Parker ("Parker Depo."), at 47: 6-14; Doc. 79-5, Deposition of Abdul Razak ("Razak Depo."), at 39: 20-25; Doc. 79-6, Deposition of Fletcher Williams ("Williams Depo."), at 15: 3-15; and Doc. 79-7, Deposition of Nicole Jean-Baptiste ("Jean-Baptiste Depo."), at 50: 11-13). Omni denies that the floor was wet as claimed by Plaintiff, and argues that there is no evidence to support that claim. Doc. 79-1, ¶¶ 28, 35-40. That fact is disputed by Plaintiff.[5] The parties agree that there was a wet floor sign inside the front entrance doors. *Id.* ¶¶ 6-7, 21. Specifically, Plaintiff concurs that "a wet floor sign was placed in the lobby

_____

each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)1. "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement," which must be "filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." *Id.*

[5] Plaintiff states that she "did not notice any water on the floor of the Hotel prior to her fall." Doc. 93, ¶ 28. However, she did notice that her clothes were wet after she fell and also "that she fell due to the fact that the floor was wet." *Id.* ¶ 29 (citing Doc. 93-16, Deposition of Plaintiff Hui Wang, at 54: 10-18, 80: 7-12, 91: 24 to 92: 4).

in front of the revolving door when there was inclement weather as a precautionary measure." Doc. 93, ¶ 6.

The effectiveness of the wet floor sign's position in the lobby is disputed by the parties. Omni asserts that the sign was positioned so that "it was the first thing patrons saw when entering the Hotel." Doc. 79-1, ¶ 7 (citing, *inter alia*, Doc. 79-10 (Photo of wet floor sign on date of incident)). Plaintiff, however, contends that she "never observed the wet floor sign as she entered the hotel before she fell." Doc. 93, ¶ 7.[6] In any event, the wet floor sign was placed in the Hotel's lobby at approximately 2:30 p.m., more than five hours prior to the incident, as a precautionary measure given the prevailing rainy condition on the date of Plaintiff's fall. Doc. 79-1, ¶¶ 6-7, 21.

Omni has presented the Court with videos from two security cameras depicting the Plaintiff's fall. Doc. 79-14. These videos were shown to Plaintiff during her deposition. Doc. 79-1, ¶ 41, and Doc. 93, ¶ 41. In the "door view" video, Plaintiff is seen using the right-hand of two swinging

---

[6] Plaintiff's expert, consulting engineer Douglas Fisher, opines that "a person entering the hotel would not be able to see the wet floor sign where it was placed by the Defendant," Doc. 93-14, at 8. In his report on Plaintiff's injury claim, he concluded that "there are issues with the placement of the mats and the location of the warning sign" at the Hotel on the relevant date. Doc. 93-14, at 8. As to the location of the "Caution Wet Floor" sign, he noted that it was "located approximately 15 feet or more from where someone first enters the lobby through the right side door" and "n[either] situated in the line of sight nor along the common path of travel." *Id.* at 9. It would have been "more visible" if it had "been located closer to the entry doors, adjacent to the building columns." *Id.*

"[T]here can be no question that expert opinions, as a general matter, are admissible so long as they meet the criteria set forth in Federal Rule of Evidence 702." *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 838 (S.D.N.Y. 2018). Here, however, the Court need not decide whether Fisher's report constitutes admissible evidence; the Court is able to determine whether material facts regarding the location of the sign and its effectiveness are in dispute based on other, clearly admissible evidence presented. Plaintiff has testified regarding the site; and there are multiple photographs and videos. If Fisher ultimately meets the requirements of Federal Rule of Evidence 702, his measurements and observations of the premises may be admitted if the case proceeds. The Court voices no opinion on admissibility of Fisher's report at this time.

doors to enter the Hotel.[7]  As she did so, she looked behind herself and made no attempt to wipe her feet.  Doc. 79-1, ¶¶ 39-43.  The video shows that at time stamp 19:41:15,  Plaintiff stepped off of a mat placed in front of the swinging door through which she entered and onto the marble floor where she fell.  *Id.* ¶¶ 24-25,  41-42.  Other people were seen walking in the lobby in the location of Plaintiff's fall.  *Id.* ¶ 43.  It is disputed by the parties as to whether any of those individuals  had difficulty traversing the area of Plaintiff's fall both before and after that fall occurred.  *Id.* ¶ 44; Doc. 93, ¶ 44.[8]  However, in viewing an extended "door view" video proffered by the Plaintiff, the Court observed two other individuals who appeared to slip but did not fall to the ground.  *See* Doc. 93-15 (Ex. 15).

Additionally, it remains disputed between the parties as to whether Omni "regularly and continuously inspect[ed]" the Hotel's lobby.  Doc. 79-1, ¶¶ 11-15; Doc. 93, ¶¶ 11-15.  Omni presented testimony of various Hotel employees, such as Kristen Perkins, Assistant Front Office Manager, to argue that the lobby area is "routinely inspected by various people [who] work at the hotel" and the bellman and the "front desk people . . . look[ ] out for anything that could cause a hazard to patrons or to guests."  Doc. 79-3, at 57: 7-19.  However, when questioned by Plaintiff's counsel at her deposition, Perkins admitted that she "personally did not inspect the area where [Plaintiff] fell" before that fall and did not know "specifically who inspected that area before

---

[7]  This door was to the right of the revolving door if one has the vantage point of inside the hotel.  From the outside, the door would be the left-hand swinging door.

[8]  Specifically, having reviewed the video at issue, the Court observed two incidents of possible slipping: a woman walking through the left side door, who steps into the area in front of the revolving door and has both feet slip (Video time stamp  19:43:20); and a woman who enters just before Wang and steps into the area of the marble floor in front of the revolving door, causing her right foot to slip, and looks back at the floor as she continues (Video time stamp: 19:41:07).

[Plaintiff] fell." Doc. 93-22, at 67: 1-8.

Furthermore, Nicole Jean-Baptiste, the evening lobby attendant on duty on the evening of Plaintiff's fall, testified that it was her duty to clean the lobby, but that was just one of many of her duties. She also had to clean "all the public bathrooms" throughout the Hotel: five bathrooms on the mezzanine, bathrooms in the employee locker room on Floor 1B, bathrooms on the third floor near the gym, and the bathroom in the restaurant on the nineteenth floor. Doc. 93-24, at 8: 9-25; 9: 1-17; 10: 2-18; 11: 1-25; 12: 1-4; 16: 1 to 17: 4. In addition, she had to clean the gym and replenish the towels there from the laundry. *Id.* at 11: 1-24. She thus agreed that when she cleans the bathrooms on the other floors, she "can't be down on the lobby floor inspecting [it]." *Id.* at 33: 12-23. Moreover, she could not recall inspecting the floor area near the revolving doors on the date of Plaintiff's fall. *Id.* at 27: 14-21.

Finally, Defendants state that (1) there is no evidence that any Omni employee found the lobby to be "anything other than dry on the date of the incident;" and (2) even if there were evidence that the floor was wet when Plaintiff fell, there is no evidence of how long that condition existed. Doc. 79-1, at ¶¶ 35-36, 37-40.[9] Therefore, even if a dangerous condition existed at the time of Plaintiff's fall, there is no proof that Omni had actual or constructive knowledge of that condition; and/or Omni discharged its duty by warning Plaintiff of such condition with a wet floor sign.

---

[9] Omni presents deposition testimony of Omni employees (Perkins Depo., Doc. 79-3, at 64: 14-21 (agreeing that the front entrance to the hotel doesn't necessarily get wet when it rains because it is under a "covered area"); Razak Depo., Doc. 79-5, at 10: 7-24; 12: 17-23 (as a "house person" at the Hotel, he performs "regular inspections of the floors to see if there's any wetness" and claims that the floor was "okay" when he inspected it at some point but was "standing far from where [Plaintiff] fell"); Jobst Depo., Doc. 79-11, at 42: 15-25; 43: 21-25 (as a bellman, he knows the area where Plaintiff fell was "dry prior to the fall" when he "left for break," but that was at least 30 minutes before the fall).

To refute the allegations that no water was on the floor, Plaintiff points to the Omni Incident Report, Doc. 93-1 , which mentioned that an "[e]ye witness with limited language stated she fell in front of (revolving) doors, possibly due to rain." Doc. 93-1, at 2.  Such a statement is hearsay as to the cause of Plaintiff's fall, but Plaintiff herself  testified at her deposition that the marble floor where she fell was wet and made her clothing wet." Doc. 93-16, at 80: 10-12.  She stated, "I slipped because of the water," *id.* at 92: 1-2; and "[m]y pants were wet," *id.*  at 92: 14.

When asked about whether there was a mat where she fell, Plaintiff testified  that she was "very sure" that there was "no such mat" because "it's a very cold feel [ing] on the floor and it's water and my clothes were wet."  *Id.* at 54: 13-18.  Prior to entering the Hotel, Plaintiff  "did not know that there was wetness on the floor" because she could "not see the inside from outside," especially "in the nighttime." *Id.* at 61: 8-11.  However, once she entered and slipped, she discovered that the floor was wet.  *Id.* at 80: 10-12 ("My pants were all wet from falling.  And my friends were helping me by giving me some drier things to sit on while I'm down on the floor.").  She also stated that she did not see Omni's warning sign before she fell.  *Id.* at 84: 12-14.

## IV.  DISCUSSION

The Court examines each element of Omni's argument for summary judgment.

## A.    Whether Plaintiff Has Shown That A Dangerous Condition Existed on September 25, 2018

In her Complaint, Plaintiff sets forth one claim, alleging "carelessness and  negligence" by Omni, seeking damages resulting from her slip and fall in the Hotel lobby on the evening of September 25, 2018. Doc. 1-1 (Complaint), ¶¶ 4-5.  In response, in moving for summary judgment as a matter of law, Omni asserts that Plaintiff "cannot even establish the existence of a dangerous condition," one that "rendered Omni's premises unreasonably safe on September 25, 2018, let alone

that if such a condition did exist, Omni had actual or constructive notice of the presence of the specific unsafe condition which Plaintiff claims caused her injury." Doc. 79-2, at 8-9.

### 1. *Whether a defective condition existed: was the floor wet?*

In the present case, it is undisputed that the Plaintiff was a business invitee, a guest of the Hotel, and that Omni therefore had a duty to keep the premises of the lobby in a reasonably safe condition. *See, e.g.*, *Baptiste v. Better Val–U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002) (citing *Martin v. Stop & Shop Supermarket Co., Inc.*, 70 Conn. App. 250, 251, 796 A.2d 1277 (Conn. App. 2002)). To hold Defendant Omni liable for her personal injuries, Plaintiff "must prove (1) the existence of a defect, and (2) that the defendants knew or should have known, in the exercise of reasonable care, of the defect." *Chaves v. Exxon Mobil Corp.*, No. CIV.A. 3-06-CV-1589J, 2009 WL 57119, at *3 (D. Conn. Jan. 5, 2009)(citing *Cruz v. Drezek*, 175 Conn. 230, 238–39, 397 A.2d 1335 (1978)).

Plaintiff's premises liability claim is predicated on the alleged fact that the floor in front of the revolving door inside the Hotel's lobby entrance was dangerously wet, causing her to fall and become injured. With respect to this fact she bears the burden of proof. She must "offer evidence sufficiently describing the condition of the [property] so as to afford a reasonable basis in the evidence for the jury to find that a defective condition in fact existed." *Riccio v. Harbour Vill. Condo. Ass'n, Inc.,* 281 Conn. 160, 164, 914 A.2d 529, 532-33 (2007).

In the case at bar, the parties dispute the fact of whether the lobby floor in the entrance was wet when Plaintiff fell. Plaintiff testified at her deposition that the floor was wet, and this caused

her pants to be wet.[10]  She stated, "The fact that I slipped there is water.  I slipped because of the

water." Doc. 93-16  (Wang Depo.), at 91: 24 to 92: 4.  Plaintiff also indicated that her "pants were

all wet from falling" and "[her] friends were helping [her] by giving [her] some drier things to sit

on while [she was]  down on the floor." *Id.* at 80:10-12; 92:14.  She testified that she and her fellow

classmates, who were visiting from China to participate in a Yale School of Management ("SOM")

program, had traveled around New Haven by bus that day, supporting the notion that her clothing

was not wet until the incident at issue occurred. *Id.* at 48: 2-10; 49: 2-9; 55: 17-23.

In addition, from the video evidence submitted on the record by both parties, the Court

observed that Plaintiff slid backward the moment she stepped into the lobby.[11]  Doc. 79-14, Door

View Video, at 19:41: 15.  She stepped onto the bare marble floor between the revolving door and

a mat placed a few feet away from that door.  Viewing the video, one might reasonably conclude "the

---

[10]   As further evidence of the wet condition of the lobby floor, Plaintiff pointed to the
accident report of the New Haven Fire Department, stating that "[w]itnesses stated that the patient
slipped and fell due to the wet floor in the building." Doc. 92-1, at 4 (citing 92-3 (Ex. 3), at 3).  Such
an out-of-court statement offered for the truth of the assertion (*i.e.*, that the floor was wet) is
inadmissible hearsay.  Fed. R. Evid. 802.  Similarly, statements in the Yale New Haven Hospital
record, indicating that "Pt. [patient] was walking at Yale and slipped on water that was on the
ground," Doc. 93-4 (Ex. 4), at 9, constitute inadmissible hearsay, which the Court may not consider
on summary judgment.  *Doe ex rel. Doe v. Darien Bd. of Educ.*, 110 F. Supp. 3d 386, 395 (D. Conn.
2015) (A party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment
... absent a showing that admissible evidence will be available at trial." )(quoting *Burlington Coat
Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985)).

[11]   An extended video submitted by Plaintiff also showed two other women possibly slip in
the area where Plaintiff fell. At 19:41:07 on this video, a woman wearing a white shirt and black
leggings appeared to slip briefly in the area where Plaintiff fell; she then looked back at the floor as
she walked away.  Doc. 93-15, at 19:41:07.  Also, two minutes after Plaintiff fell, a woman wearing
a black jacket and blue shirt was seen to walk through the  swinging door to the left of the revolving
door, then into the area where Plaintiff fell.  She was carrying a package of water bottles and as she
put this package down, both of her feet began to slip beneath her; a gentleman wearing a white shirt
reached out and steadied her, pulling her up by her arm to prevent a fall.  *Id.* at 19:43:20.  Such
potential slipperiness of the floor bolster's Plaintiff's position that the floor was wet.

wet surface of a marble floor would be slippery." *Deptula v. New Britain Tr. Co.*, 19 Conn. Supp. 434, 436, 116 A.2d 773, 774 (Com. Pl. 1955).

Omni counters that Plaintiff "did not see the condition of the lobby floor where she slipped prior to the incident" — *i.e.*, she did not see whether it was wet. Doc. 79-2, at 10. According to her deposition testimony, she only discovered she had become wet when she fell.[12] Doc. 93-16 (Wang Depo.), at 91: 24 to 92: 4. Omni argues that, following its own investigation, "[n]ot a single person will testify to the existence of a wet condition on the floor prior to Plaintiff's fall." Doc. 79-2, at 10 (citing Doc. 79-1, ¶ 28). In addition, there were "no reports of any wet condition in the lobby prior to Plaintiff's fall." *Id.* (citing Doc. 79-1, ¶¶ 37-40).

However, none of Omni's witnesses could testify that they affirmatively acted to determine whether the relevant area of the lobby floor was wet or dry at the time Plaintiff fell. None described actually inspecting that portion of the lobby floor to see if it was wet. Bellman Ian Jobst testified at his deposition that he never inspected the floor after Plaintiff fell so does not know whether it was wet or dry. Doc. 93-17, at 18: 6-14. Omni's General Manager of the Hotel at that time, Fletcher Williams, was not present at the Hotel on the night in question so he did not personally inspect the floor after Plaintiff fell. Doc. 93-19, at 26: 14-16. He only surmised that the floor was dry because his "team" told him it was; but he never saw it himself. *Id.* at 26: 22 to 27: 1; 28: 7-10. Assistant

---

[12] As the Connecticut Supreme Court noted in *Kelly v. Stop & Shop, Inc.*, 281 Conn. 768, 788, 918 A.2d 249, 261-62 (2007), "[a]n injured customer is often at a decided disadvantage in determining what has happened. The fall victim may be dazed, helpless and friendless, unable to interview bystanders or to observe the scene carefully." 281 Conn. at 788 (quoting *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778, 782 (Mo. 1989)). The business is "able to make an immediate investigation, interviewing witnesses and diagramming the scene. Relative availability of evidence to the parties is a circumstance to be considered in determining what should be required for making a submissible case." *Id.* (quoting *Sheil*, 781 S.W.2d at 782).

Front Office Manager Kristen Perkins was on the scene the night Plaintiff fell and prepared the Incident Report of the fall. Doc. 93-22, at 22: 2-3, 13-18. Perkins admitted that she "personally did not inspect the area where [Plaintiff] fell" before the fall and did not know "anybody specifically who inspected that area before [Plaintiff] fell." Doc. 93-22, at 67: 1-16. Although she claims she visually examined the floor that night, she did not get down on her hands and knees or touch the floor with her bare hands. *Id.* at 28: 14-25; at 67: 1-18. Because marble is shiny, one might conclude that simply looking at it might not be determinative as to whether it was wet. In addition, Housekeeper Abdul Razak testified that he doesn't know if the area where Plaintiff fell was wet or not when Plaintiff fell; he "did not inspect that area." Doc. 93-18, at 17: 19-24.

Finally, neither of the two deposed Omni lobby attendants– who admitted that it was their duty to mop the lobby— were able to testify whether the lobby floor was wet on the day Plaintiff fell. Doc. 93-23, at 13: 21-25; 30: 3-18; 34: 1-6; Doc. 93-24, at 8: 9-14. Veronica Parker was on duty from 7:00 a.m. to 3:30 p.m on September 25, 2018, so she left hours before Plaintiff fell. Doc. 93-23, at 10: 9-16; 15: 6-9. Nicole Jean-Baptiste was on duty on that day from 2:30 p.m. to 11:00 p.m., Doc. 93-24, at 20: 12-16, but her time and attention were diverted to the many other areas of the Hotel she had to keep them clean, *id.*, at 8: 9-21. In particular, as a lobby attendant, Jean-Baptiste had to clean the mezzanine and all other public areas (the bathrooms, locker rooms, 19th floor, gym, business center), so she was so was not in the lobby when Plaintiff fell. *Id.* at 26: 2-4, 21-25. She does not even recall what happened on that day. *Id.* at 24: 7-10. Specifically, she does not recall inspecting the floor where Plaintiff fell on the day at issue. *Id.* at 27: 18-21.

In another "slip and fall" case in this District, in the context of summary judgment, Judge Hall assessed the evidence presented regarding the existence of a defect as follows:

> Both [plaintiff] Chaves and her daughter, Melissa, described the area where she fell as slippery as evidenced by them both sliding around on the substance. Further, the fact that Chaves' clothes were wet indicates there was a defect on the sidewalk. While defendants argue that it was too wet to be ice, they do not contest that it could have been a combination of water and ice. The court thus finds that there is enough evidence, though it is weak, that there was a defective condition on the Station sidewalk which caused Chaves to fall.

*Chaves v. Exxon Mobil Corp.*, No. CIV.A. 3-06-CV-1589J, 2009 WL 57119, at *3 (D. Conn. Jan. 5, 2009).

In the case at bar, on video, Plaintiff was seen to slide as she fell. She testified that her clothes became wet from the fall. None of Omni's witnesses actually touched the floor to determine whether it was wet. The only person who testified that she inspected the floor was Perkins and she only looked at the floor after Plaintiff fell, and never touched it to see if it was wet. Doc. 93-22, 67: 1-18. Also, as discussed below, certain Omni employees conceded that when it rains, water is tracked into the lobby by guests and must be mopped up.[13] In other words, it is possible that the floor became wet from the rain.

In such a case — where Plaintiff and Defendant offer depositions of witnesses with "polar opposite positions on whether the floor in the vicinity of Plaintiff's fall was wet at the time of Plaintiff's accident" — the credibility of the witnesses "may be an important issue." *Graham v.*

---

[13] At their depositions, Omni's employees testified that they had previously witnessed that the lobby floor became wet on days when it rained. *See, e.g.*, Doc. 93-17 (Bellman Jobst admitted that he had seen the floor wet prior to that date, *id.* at 23: 14-18; "wet shoes would come in and make [the floor] wet, and then you would dry it up afterwards," *id.* at 49: 24 to 50: 2.); Doc. 93-18 (Housekeeper Abdul Razak testified that the lobby floor will get wet when it rains outside and people walk in; *id.* at 12: 2-7; and it is the lobby attendant's job to "mop the floor if there's wetness or a spill," *id.* at 25: 7-9; at 38: 1-6); Doc. 93-23 (lobby attendant Veronica Parker testified that when it rains, "[p]eople track the water into the lobby," *id.* at 15: 20-25); Doc. 93-24 (lobby attendant Nicole Jean-Baptiste recalled in her testimony that when it's raining outside, she has seen patron guests bring water into the lobby floor with their wet shoes, *id.* at 37: 6-10).

*Kohl's Dep't Stores, Inc.*, No. 3:04CV949(MRK), 2005 WL 2256603, at *2  (D. Conn. Sept. 8, 2005).  "[S]uch credibility issues are normally resolved by a jury based on the in-court testimony of witnesses, not by the Court as a matter of law based solely on affidavits and depositions." *Id.* (citing *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

Even if Omni considers Plaintiff's evidence regarding whether the lobby floor was wet  to be "weak," the Court "cannot say that [a] jury could not find it sufficient." *Morris v. King Cole Stores, Inc.*, 132 Conn. 489, 494, 45 A.2d 710, 712 (Conn. 1946). As fact-finder, a jury should be allowed to  determine whether the floor was wet based on the facts presented and the credibility of the relevant witnesses.  Under these circumstances, the Court finds that the parties have a genuine dispute of material fact as to the existence of the defect– whether the lobby floor was wet.

### 2.      Whether Omni's safety measures rendered the Hotel's  lobby reasonably safe on September 25, 2018

As  to  whether  the  measures  implemented  by  Omni  were  sufficient  to  make  its  lobby reasonably safe on September 25, 2018, the parties dispute the effectiveness of the alleged measures. Omni argues that it employed the following safety measures:  a porte-cochere, a "wet floor" sign in the lobby, mats inside the lobby entrance, and employee inspection and mopping  procedures on a regular and continuous basis.

With respect to a porte-cochere, Omni clarifies that this structure allows vehicles to drop off Hotel guests under the covered vehicle drive at the entrance doors.  Doc. 79-1, ¶¶ 2-4.  "The porte-cochere prevents water from entering the Hotel during inclement weather." *Id.*  ¶ 5.  In addition, Omni employees place a "wet floor" sign in the lobby as a precautionary measure during inclement

weather to warn patrons to be careful when entering the Hotel. *Id.* ¶¶ 6-7. Floor mats are placed immediately inside the two "swing doors" adjacent to the revolving door, as well as the Omni-branded mats placed inside and outside the revolving door. *Id.* ¶ 8. Lastly, Omni's lobby attendants are supposed to inspect the lobby every 5-10 minutes when they are not in other areas of the Hotel. *Id.* ¶¶ 10-12. Other Omni employees (bellman, supervisors, and front desk employees) in the lobby can see the front doors; and if any wet condition is detected on the floor, it is dried. *Id.* ¶ 15.

As to Omni's asserted safety measures, the parties dispute their effectiveness. For example, the porte-cochere "allows vehicles to drop off Hotel guests under the covered vehicle drive at the entrance doors," Doc. 79-3 (Perkins Depo.), at 64: 11-17; Doc. 79-4 (Parker Depo.), at 48: 14-24; Doc. 79-8 (photos of exterior Hotel entrance). However, the porte-cochere only protects guests whose vehicles pull up under that structure. When it is raining, a hotel patron who does not arrive in such a vehicle necessarily walks on the wet sidewalk before entering the Hotel; and multiple Omni employees testified that they previously observed water on the lobby floor as a result of guests tracking water inside the Hotel during a rain storm. *See, e.g,* Doc. 93, ¶ 5; Doc. 93-17 (Jobst Depo.), at 23: 14-25; 24: 17-25; 25: 2; 49: 20-25; Doc. 93-18 (Razak Depo.), at 11: 19-21; 12: 1-7; Doc. 93-23 (Parker Depo.), at 15: 20-25; Doc. 93-24 (Jean-Baptiste Depo.), at 37: 6-17.

In addition, Omni asserts that the "wet floor" sign is placed as a "precautionary" measure and positioned to be the "first thing" patrons see when they enter the Hotel. Doc. 79-1, ¶ 7; Doc. 79-3, at 34: 4-24. In contrast, Plaintiff testified that she did not observe the wet floor sign as she entered the Hotel before she fell. [14] Doc. 93, ¶ 7; Doc. 93-16, at 84: 12-14. Both photographs and the

---

[14] According to the testimony of Fletcher Williams, in his capacity as then General Manager of the Hotel and corporate representative of Omni, a warning sign should have also been placed outside the hotel to alert guests about the inclement weather. Doc. 93-19 (Williams Depo.), at 7: 14-

video evidence of the lobby perspective show the sign to be set back several feet from the entrance doors so that a Hotel patron might be fully inside the lobby before observing the sign.[15] Doc. 79-14 (video); Doc. 93-5 (photos),  D4, D7.

With respect to the floor mats, the parties agree that  Omni placed mats inside the two swing doors adjacent to the revolving door and an Omni branded mat both inside and outside the revolving doors.  Doc. 79-1, ¶ 8.  *See also*  Doc. 93, ¶ 8; Doc. 93-5, Ex. D4-D6 (photos of mats); Doc. 93-15; Doc. 79-14.  Omni asserts that it was the Hotel's guests' responsibility to wipe their feet on the mats upon entering the hotel.  Doc. 79-1, ¶¶ 8-9 (citing, *inter alia*, Doc. 79-3 (Perkins Depo.), at 55: 24 to 57: 6; Doc. 79-4 (Parker Depo.), at 48: 1-6; Doc. 79-5 (Razak Depo.), at 26: 21-25; 36: 20 to 37: 1; Doc. 79-11 (Jobst Depo.), at 10: 11-23, 11: 24 to 12: 7).  However, Plaintiff contests that position.  Doc. 93, ¶¶ 8-9.  In the video produced, numerous patrons could be observed traversing the  mats without wiping their feet, so that their shoes might remain wet. Doc. 79-14 (showing at least ten people who preceded Plaintiff's entry and did not wipe their feet).  It is also noticeable from the door view video (Doc. 93-15)  and photographs produced (Doc. 93-5, D5 and D6) that there was a clear

19; 51: 8-13.  However, per the testimony of bellman Ian Jobst, no such warning sign was placed outside the Hotel on the day of the accident.  Doc. 93-17 (Jobst Depo.), at 10: 24 to 11:1.

[15] Plaintiff's construction engineer expert, Douglas Fisher, provided measurements, describing the placement of the caution sign as follows:

> The "Caution Wet Floor" sign was located approximately four feet from the interior edge of the large mat, which would have been *approximately 15 feet or more* from where someone first enters the lobby through the right side door.  This sign was not situated in the line of sight nor along the common path of travel.

Doc. 93-14 (Fisher Report), at 8 (emphasis added).  These statements are not considered on summary judgment because Fisher's Report has not been deemed admissible by the Court.  However, as discussed above, in the photographic evidence submitted by the parties, the caution sign does appear to be several feet from the lobby doors.  Doc. 79-14, Doc. 93-5 (Ex. 5).

gap of at least a few feet between the revolving door and the mat inside the lobby. This gap was the precise location where Plaintiff fell.

To support its position regarding the effectiveness of their safety measures, Omni states that "the front entrance to the Hotel is a highly trafficked area and numerous individuals were observed walking over the same areas as Plaintiff both before and after the subject incident without issue." Doc. 79-2, at 11 (citing Doc. 79-1, ¶¶ 43-44). According to Omni, "the lack of any report of the wet condition" or "evidence of other individuals having difficulty traversing the same area demonstrates that Plaintiff has no evidence from which a jury could conclude [that] the specific condition [alleged] . . . even existed." *Id.* at 11-12 (citation omitted).

However, Omni's claim of a lack of any reported wet condition fails to take into account the fact that its own witnesses admittedly did not inspect the area where Plaintiff fell before the incident. Moreover, the Court has reviewed the door view video on the record and observed that two other guests who entered the Hotel appeared to slip in front of the revolving door.[16] *See* Doc. 93-13 (door view video at 19:41:07, 19:43:20). One entered prior to Plaintiff and the other after her fall. *Id.*

All in all, there are genuine factual disputes between the parties as to whether Omni's safety measures were sufficient, much less effective. For example, the wet floor sign was arguably placed too far from the lobby entrance for guests to see it as they entered; and it likely would have been safer if the large mat had been positioned directly in front of, perhaps even up against, the revolving door, instead of a few feet away.

---

[16] *See* n. 11, *supra*.

**B.    Whether the Alleged Wet Spot Was Capable of Being Observed by Omni through Reasonable Inspection**

As discussed *supra*, "[a] business owner owes its invitees a duty to keep its premises in a reasonably safe condition." *Walencewicz v. Jealous Monk, LLC*, 228 Conn. App. 349, 363, 325 A.3d 271, 281 (2024) (quoting *DiPietro v. Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012)), *cert. denied*, 350 Conn. 927, 326 A.3d 249 (2024).  However, "business owners do not breach their duty to invitees by failing to remedy a danger unless they had actual or constructive notice of that danger." *Walencewicz*, 228 Conn. App. at 363 (quoting *Diaz v. Manchester Memorial Hosp.,* 161 Conn.  App. 787, 792, 130 A.3d 868) (2015)).  In other words, the property owner may only be held liable for customers' injuries if the owner "knew or should have known of that unsafe condition."[17]  *Id.*

In the case at bar, Omni has stated that there is no evidence that its inspection of its premises,

_____

[17]  The Court notes that this case does not appear to fall under the "mode of operation rule," which "allows a customer injured due to a condition inherent in the way [a] store is operated to recover without establishing that the proprietor had actual or constructive knowledge of the dangerous condition." *Kelly v. Stop & Shop, Inc.*, 281 Conn. 768, 777, 918 A.2d 249, 256 (2007) (quoting *Jackson v. K–Mart Corp.*, 251 Kan. 700, 702, 840 P.2d 463 (1992)).  This doctrine applies to "modern-day supermarkets, self-service marts, cafeterias, fast-food restaurants and other business premises [that] should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business."  281 Conn. at 778 (citation omitted).  Narrowly applying the doctrine to businesses with "self-service" methods of operation, there is no indication that the Connecticut Supreme Court intends to expand the doctrine to encompass hotels or other businesses that do not involve foreseeable careless customer interference.  *See, e.g.*, *Porto v. Petco Animal Supplies Stores, Inc.*, 167 Conn. App. 573, 582, 145 A.3d 283, 290 (2016) (refusing to apply the mode of operation rule because that doctrine only "may substitute for notice to a retailer when the store's  mode of operation invites careless customer interference, creating an expected, foreseeable hazard.")*;  Schiff v. Strathmore Lane Condo. Ass'n, Inc.*, No. CV166029719, 2017 WL 6029549, at *3 (Conn. Super. Ct. Nov. 3, 2017)(declining to apply "mode of operation rule" to condominium association where "plaintiff ha[d] presented no evidence that the defendant's mode of operation [was] any different from any other condominium association or landlord" so that there was "no evidence of a causal connection between the defendant's conduct and foreseeable careless third-party interference, such as by customers, in a particular zone of risk").

including the lobby, was unreasonable.  It is indisputably the duty of Omni's lobby attendants, bellmen, supervisors, and front desk employees to continuously look for hazardous or wet conditions in the lobby and/or rectify them.  Doc. 79-2, at 13 (citing Doc. 79-1,  ¶¶ 11-15).

However, as Plaintiff points out, both of Omni's lobby attendants, Nicole Jean-Baptiste and Veronica Parker, testified that it was also their responsibility to maintain numerous other areas of the hotel; and while performing those other duties, they could not inspect the lobby.  *See* Doc. 93-23 (Jean-Baptiste Depo.), at 12: 22-25; 13: 1-12; 35: 1-3, 66: 10-14; Doc. 93-24 (Parker Depo.), at 8: 9-25; 9: 1-25; 10: 1-18; 11: 1-15; 12: 1-4; 16: 1-25; 17: 1-4; 33: 2-23.  Therefore, the fact that a wet condition was allegedly not detected by Omni's lobby attendants  fails to  conclusively indicate that the floor was dry when Plaintiff fell or that any water was not observable by inspection prior to that fall.[18]

## C.  Whether Omni Had Actual or Constructive Notice of the Alleged Dangerous Condition

In order for a "plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is] incumbent upon [him] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it."  *DiPietro v. Farmington Sports Arena, LLC*, 306 Conn. 107, 116–17, 49 A.3d 951, 957 (2012) (brackets in original) (quoting *Baptiste v. Better Val–U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002)).

---

[18]  Omni makes much of the fact that Plaintiff has not produced evidence of the specific composition, size, dimensions, color and/or quality of the wet spot.  Doc. 79-2, at 13.  However, as described *supra,* it is understandable that, as Plaintiff fell, she became disoriented and that her clothing, likely her pants, may have absorbed the water when she hit the ground – making it unlikely that she could subsequently describe the specific qualities of the wet patch prior to her fall.

In the case at bar, there is some evidence to suggest that Omni may have had actual notice of the alleged wet condition where Plaintiff fell. Specifically, bellman Ian Jobst testified that he observed water on the lobby floor on the day Plaintiff fell. Jobst came on duty at 2:30 p.m on that day and "put the Wet Floor sign out" in the lobby because "it was raining like crazy outside." Doc. 93:17, at 10: 17 to 23; 23: 7-9. He admits he placed the sign as a warning "because it was raining like crazy, so [he] didn't want anyone to slip and fall if no one was around" in the lobby. *Id.* at 11: 14-23. He could not remember the exact time he saw the water, but recalled that he saw the floor being mopped by the lobby attendant to dry it from people tracking in rain from outside. Doc. 93-17, at 50: 3-13. In Jobst's words, "wet shoes would come in and make it [the lobby floor] wet, and then you would dry it up afterwards." *Id.* at 49:24 to 50: 2. In particular, on September 25, 2018, he saw the lobby being mopped "everywhere," including the "particular area where [Plaintiff] fell." *Id.* at 50: 6-13.

Jobst also verified that he had seen the "floor [where Plaintiff fell] wet prior to that date" but that the staff "always try to mop it up." Doc. 93-17, at 23: 14-24. People "always bring water in when it's raining out" and the Omni lobby attendants "have like a dry mop" that they use to "mop it up." *Id.* at 24: 17-22. Similarly, Abdul Razak, a house person at the Omni Hotel, testified that when it was raining outside, people would walk in and the floor would get wet. Doc. 93-18 (Ex. 18), at 7: 20 to 8: 1; 11: 19 to 12: 7. If Omni employees were aware that water was being tracked in as early as 2:30 p.m. on the rainy day in question, September 25, 2018, vigilant mopping should have been fully in effect when Plaintiff entered the lobby. Persistent tracking of water appears to have been a known and/or at least anticipated activity by guests so it would have been reasonable to monitor the lobby floor closely for tracked water.

Alternatively, Omni may have had constructive notice of water on the floor in that location. Under Connecticut law, "[t]he controlling question in deciding whether the [defendant] had constructive notice of the defective condition is whether the condition existed for such a length of time that the defendant[ ] should, in the exercise of reasonable care, have discovered it in time to remedy it. . . . What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case." *Riccio v. Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 163–64, 914 A.2d 529 (2007) (citation and internal quotation marks omitted). "It is settled that circumstantial evidence can establish constructive notice." *Sokolowski v. Medi Mart, Inc.*, 24 Conn. App. 276, 287, 587 A.2d 1056 (1991).

"[R]elevant case law in Connecticut places a heavy burden on a 'slip and fall' plaintiff to demonstrate that a defendant had actual or constructive notice of the specific defect that led to the accident and 'not merely of conditions naturally productive of that defect even though subsequently in fact producing it.'" *Graham v. Kohl's Dep't Stores, Inc.*, No. 3:04 CV 949(MRK), 2005 WL 2256603, at *1 (D. Conn. Sept. 8, 2005) (quoting *LaFaive v. DiLoreto*, 2 Conn. App. 58, 60, 476 A.2d 626 (1984) (citation omitted)).

As the Connecticut Appellate Court stated in *Colombo v. Stop & Shop Supermarket Co.*, 67 Conn. App. 62, 787 A.2d 5 (2001):

> The plaintiff [bears] the burden of proffering some evidence, either direct or circumstantial, from which the jury could infer that the defect she allegedly encountered existed for a length of time sufficient to put the defendant on actual or constructive notice of its existence. In the absence of such evidence, we cannot permit a jury to reach such a conclusion on the basis of either speculation or conjecture.

67 Conn. App. at 64 (citations omitted).

"The notice, whether actual or constructive, must be notice of the very defect which

24

occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it." *Kelly*, 281 Conn. at 776 (quoting *Baptiste,* 262 Conn. at 140). "To a considerable degree each case must be decided on its own circumstances;" and "[e]vidence which goes no farther than to show the presence of a slippery foreign substance does not warrant an inference of constructive notice to the defendant." 281 Conn. at 777 (quoting *Morris v. King Cole Stores, Inc.*, 132 Conn. 489, 494, 45 A.2d 710 (Conn.1946)). However, the condition of the substance can evidence constructive notice. *Morris*, 132 Conn. at 492-93 (stating that a jury could reasonably find constructive notice upon hearing evidence that the lettuce the plaintiff slipped on was dirty and "looked as though several people stepped on it before.").

"Business owners are chargeable with constructive notice of a dangerous condition when, had they exercised reasonable care, they would have discovered the condition ... Constructive notice is triggered by a general duty of inspection or, when the dangerous condition is not apparent to the human eye, some other factor that would alert a reasonable person to the hazard." *DiPietro, at* 306 Conn. at 118 (citing  2 Restatement (Second), Torts § 343 (1965)).

As  Judge Kravitz concluded in the "slip and fall" case of  *Graham v. Kohl's Dep't Stores, Inc.,* No. 3:04 CV 949(MRK), 2005 WL 2256603 (D. Conn. Sept. 8, 2005), circumstantial evidence may be "sufficient to prove Defendant's constructive notice of the defect that led to Plaintiff's injuries." 2005 WL 2256603, at *1 (collecting cases). *See also Kurti v. Becker*, 54 Conn.App. 335, 338–39, 733 A.2d 916 (1999) ("An occupier of land is chargeable with constructive notice of defects when dealing with invitees. . . . It is settled that circumstantial evidence can establish constructive notice.") (citation and internal quotation marks omitted); *cf. Chaves v. Exxon Mobil Corp.*, No. CIV.A. 3-06-CV-1589J, 2009 WL 57119, at *5 (D. Conn. Jan. 5, 2009) (distinguishing cases,

finding no constructive notice where "there is no evidence that the defendants should have been aware of this defect and should have remedied it" because "there was no precipitation that would have caused an inspection").[19]

In the present case, Defendants argue that summary judgment should be granted because Plaintiff "is unable to establish constructive notice because she does not know how long the defect existed for and has presented no other evidence to establish the origin, nature, and age of the defect." Doc. 79-2, at 23 (quoting *Caviness v. Danbury Mall, LLC*, No. DBDCV196033893S, 2022 WL 225690, at *9 (Conn. Super. Ct. Jan. 5, 2022)). Specifically, in Omni's quoted *Caviness* case, the Plaintiff had failed to present "key temporal evidence." 2022 WL 225690, at *9.

However, Omni employees knew of the likelihood of rain being tracked into the lobby as early as 2:30 p.m. on September 25, 2018. Numerous employees admitted that rain was typically tracked in by guests and had to be mopped up. *See* n. 13, supra. Therefore, under Connecticut law,

_____

[19] In *Kurti v. Becker,* 54 Conn. App. 335, 733 A.2d 916 (1999) , *cert. denied,* 251 Conn. 909 (1999), an elderly social invitee slipped on homeowners' icy driveway, breaking his leg, and brought a negligence action against the homeowners to recover for his injuries. The Connecticut Appellate Court affirmed the judgment for plaintiff, finding that a jury "reasonably could have found that the ice [upon which plaintiff fell] was on the defendants' driveway for a period of time sufficient for the plaintiff to have had constructive notice of it. . . . [T]he warm air on the day before the plaintiff's fall could have caused the snow near the driveway to melt and then freeze on the defendants' driveway when the air temperature fell below freezing on the [next] morning." 54 Conn. App. at 339. Therefore, "the jury reasonably could have found that the defendants had constructive notice of their icy driveway because in the performance of a reasonable duty to inspect the premises the defendants would have discovered the defective condition which caused the plaintiff's fall in ample time to remedy it before the accident....'" *Id.* (citation and internal quotation marks omitted). *See also Chaves v. Exxon Mobil Corp.*, No. CIV.A. 3-06-CV-1589J, 2009 WL 57119, at *5 (D. Conn. Jan. 5, 2009) (distinguishing facts in *Kurti,* noting, "[p]erhaps if the temperatures were well below freezing it would have been enough to provide constructive notice to the defendants that ice could have potentially formed on the premises").

as in *Kurti*, " in the performance of a reasonable duty to inspect the premises [Omni employees] would have discovered the defective condition which caused the plaintiff's fall in ample time to remedy it before the accident....'" 54 Conn. App. at 339.

After all, Omni bellman Ian Jobst  testified that he observed the lobby floor being mopped for water on the day Plaintiff fell.  He admits he placed the warning sign at 2:30 p.m. "because it was raining like crazy, so [he] didn't want anyone to slip and fall if no one was around" in the lobby. Doc. 93-17,  at 11: 14-23.   He could not remember the exact time he witnessed mopping, but he recalled that he saw the floor being mopped by the lobby attendant  to dry it from people tracking in rain from outside.  *Id.* at 50: 3-13.  In Jobst's words, "wet shoes would come in and make it [the lobby floor] wet, and then you would dry it up afterwards."  *Id.* at 49:24 to 50: 2.   In particular, on September 25, 2018, he saw the lobby being mopped "everywhere," including the "particular area where [Plaintiff] fell."  *Id.* at 50: 6-13.

If Omni had made reasonable, persistent inspections during the rain, any dangerous wet spots would likely have been discovered.  As Omni's lobby attendants conceded, it was their duty to continuously inspect and mop the lobby floor when water appeared.  Doc. 93-23, at 13: 21-25, 30: 3-18; 34:  1-6; Doc. 93-24, at 8: 9-14.

Furthermore,  Plaintiff has provided video evidence of a prior guest who was seen to slip in the exact location where Plaintiff fell.  *See* Doc. 92-1, at 21 & n.1 (citing Ex. 15,  Video of "Incident 9.25.18 Door View" at time stamp 19:41:07, showing "a woman entering the hotel lobby just before the Plaintiff where her right foot is caused to slip").  As the Connecticut Supreme Court observed in *Magnon v. Glickman,* 185 Conn. 234, 239, 440 A.2d 909, 912 (1981),  there was evidence that the floor at issue was "so slippery that [another individual] could slide upon it" so that "the jury were

entitled to infer that the defendant had failed to use reasonable care to keep its premises reasonably safe for its business visitors." 185 Conn. at 239 (citation omitted).[20]

Omni points to the case of *White v. E & F Construction Company*, 151 Conn. 110, 193 A.2d 716 (1963), to illustrate the point that the foreseeability of water being tracked into a building alone is insufficient to establish constructive notice of a dangerous condition. In that case, the plaintiff worked as a domestic for a tenant of an apartment house and entered that building through its rear entrance. As Defendant notes, the "plaintiff fell on a basement stairway [of the apartment house] when she stepped from the landing to go down the stairs" and "[a]fter her fall, she noticed the landing was wet." Doc. 79-2, at 24 (quoting *White*, 151 Conn. at 112). "The door to the rear entry was propped open at the time, and rain was coming through the doorway." *Id.* (quoting *White*, 151 Conn. at 112).

In *White*, the back entrance of an apartment house was not monitored like the Omni Hotel entrance, through which guests stream constantly throughout their stays. In *White*, "[f]our families lived in the apartment house" and "[t]he rear door was used by all of them." 151 Conn. at 113. There was no evidence that the defendant owner was on the premises, and "the condition which caused the plaintiff to fall had been present for about two minutes before the time she entered the building." *Id.* Under those conditions, "it [was considered] pure speculation to indulge in an attempt to determine when or by whom the door had been opened" or to impute constructive notice of the wet back stairway to the owner. *Id.*

In the case at bar, however, no doors at the lobby entrance had been manipulated in an

---

[20] Granted, the guest who slipped on the video entered the lobby very briefly before Plaintiff, but it takes mere seconds for a lobby attendant to mop a puddle if one is standing by for this purpose.

unexpected way. No door had been mysteriously propped open. Defendant's own statement of facts establishes that the entrance to the Hotel lobby was supposed to be continuously monitored on a regular basis. Defendants have asserted: (1) "[t]he [Hotel] lobby is regularly and continuously inspected;" (2) "[l]obby attendants routinely clean and inspect the lobby floors," (3) the "lobby attendants inspect the lobby every 5-10 minutes, when they are not in other areas of the hotel," and (4) the "bellman, supervisors, and front desk employees are in the lobby throughout their shift, can see the front doors to the Hotel, and continuously look for any hazardous or wet condition of the lobby." Doc. 79-1, at 3-4 (¶¶ 11-14) (citing deposition testimony of Omni employees).[21] Such close scrutiny of the Hotel entrance suggests that Defendant had constructive notice of water at the entrance and/or of anyone slipping on rain upon entering the lobby. *See* Doc. 79-14; Doc. 93-15 (surveillance video of door entrance).

On a motion for summary judgment, it is mandated that the Court view all of the evidence and reasonable inferences in the light most favorable to Plaintiff, as the non-moving party. Therefore, at this stage of the case, the Court is not prepared to conclude that there are no material issues of disputed fact regarding notice such that Defendant is entitled to judgment as a matter of law. There is some evidence in the record of the following: (1) as of 2:30 p.m. Omni placed a "wet floor" sign in the lobby, across from the site where Plaintiff fell, as a precaution regarding a recurring, known dangerous condition, Doc. 79-1, ¶¶ 6-7, 21; (2) it had been raining on the day that Plaintiff fell since at least 2:30 p.m. and never stopped so the likelihood of this condition remained in effect, *id.* ¶ 21;

---

[21] *See, e.g.,* Doc. 79-3 (Perkins Depo.), at 50:13 to 51:14, 57:7-19, 68:3-22; Doc. 79-5 (Razak Depo.), at 8:13-19, 10:7 to 11: 1; Doc. 79-11 (Jobst Depo.), at 35:1-23, 44:9-25; Doc. 79-6 (Williams Depo.), at 27:21 to 29:7; Doc. 79-4 ( Parker Depo.), at 7:16-20, 29:23 to 30:7, 49:8 to 50:8, 63:8-14; Doc. 79-7 (Jean Baptiste Depo.), at 8:9-14, 21:1-3, 31:15-21, 32:14 to 33:11, 41:7 to 42:17, 44:1-6.

and (3) Omni lobby attendant Jobst saw that the lobby floor where Plaintiff fell had been wet earlier during the day and had required mopping,  Doc. 93-17, at 49: 24 to 50: 13.

With respect to constructive notice of water at the lobby entrance, Omni has noted that the danger of a wet floor was "open and obvious," there was thus a need to place a "Caution Wet Floor" sign in the lobby as a precaution, Omni employees were aware  that water gets tracked in when it rains, and it is the duty of Omni employees to inspect constantly and mop any water on the lobby floor.   Furthermore, in addition to providing video of her own slip and fall, Plaintiff has provided video evidence of a prior guest who slipped as she entered the lobby in the exact location where Plaintiff fell.  *See* Doc. 92-1, at 21 & n.1 (citing Ex. 15,  Video of "Incident 9.25.18 Door View" at time stamp 19:41:07).

"A notice question ordinarily raises a question of fact inappropriate for resolution by summary judgment." *Prodigy Servs. Co. v. S. Broad Assocs.,* 64 F.3d 48, 52–53 (2d Cir. 1995) (quoting  *Casanova Club v. Bisharat*, 189 Conn. 591, 596, 458 A.2d 1, 3 (1983)).  As the Second Circuit concluded, reversing summary judgment:

> We recognize that the evidence indicating constructive notice in the record before us is fairly weak. Nevertheless, we are reluctant to dispose of this case on this issue when we do not have all of the discovery material before us. In addition, as noted, *notice is normally a question left to the jury*. Thus, satisfied that there is at least some evidence from which a jury might find constructive notice, we leave to the factfinder to determine whether [defendants] had constructive notice of [the defect] and did not exercise reasonable care in the maintenance of the [premises].

*Prodigy Servs.*, 64 F.3d at 53 (emphasis added).  In light of the aforementioned evidence presented, the Court will leave it to the jury to determine whether Omni had notice of the alleged defect – water at the relevant site of the lobby floor.

**D.    Whether the Condition of the Wet Floor at the Entrance to the Hotel Was So "Open and Obvious" that Omni Cannot Be Held Liable**

Omni argues  that it cannot be held liable for Plaintiff's injuries because it has "no duty to warn of a dangerous condition that is actually known to the plaintiff, or is open and obvious."  Doc. 79-2, at 30 (citing, *inter alia*, *Fleming v. Garnett*, 231 Conn. 77, 84, 646 A.2d 1308, 1313 (1994)). In support, Defendant states that Plaintiff was aware that it had been raining and was aware that "floors in general and marble floors in particular are slippery when wet."  Doc. 79-1, ¶¶ 16-18. Furthermore, she understood that a sign reading "caution wet floor" meant that "[y]ou have to pay attention, it's slippery." *Id.* ¶¶ 19-20.

However, Plaintiff disputes that the danger of the wet floor was "open" and "obvious."  She admits she was aware that "it had been raining on the date of the incident," but she "was not aware that the floor was wet when she walked into the lobby floor that day."  Doc. 93, ¶¶ 17-18;  Doc. 93-16, at 61: 8-11.  She also disputes the effectiveness of the "caution wet floor" sign in the lobby because she never saw it before she fell.  Doc. 93, ¶ 19;   Doc. 93-16, at 84: 12-14.  As she points out, the wet floor sign was set well back from lobby entrance.  Doc. 93,  ¶ 21.   In other words, due to its location, the sign was not within her line of sight.

When Plaintiff entered the Hotel lobby, she did not have ample time to assess the condition of the wet floor – whether it was constructed of marble or other material and/or inherently slippery. She testified, "I did not know that there was wetness on the floor before I went in" and " I cannot see the inside from outside," especially "in the nighttime." Doc. 93-16, at 61: 8-11.  In addition, as shown on the video, she took two short steps  through the side door and fell momentarily in the spot of bare floor between the revolving door and the floor mat.   Given the location of the "caution wet floor" sign, it is questionable whether that warning was in fact "obvious" or sufficient to warn

entering guests of potential slipping. In light of the facts disputed by the parties, the Court cannot find as a matter of law that the nature of the defect in this case was "obvious" in nature. That question is best left to be determined by a jury.

**E.    Whether Omni Discharged Its Duty as a Matter of Law by Providing a Warning of the Alleged Dangerous Condition**

Ultimately and alternatively, Omni argues that even "[a]ssuming, *arguendo*, the wet spot existed, could have been discovered by a reasonable inspection and Omni had actual or constructive knowledge of it, Omni was simply required to 'warn an invitee of dangers that the invitee could not reasonably be expected to discover.'" Doc. 79-2, at 27 (quoting *DiPietro*, 306 Conn. at 116). Omni concludes that it is "entitled to summary judgment" because it "discharged that duty as a matter of law." *Id.*

In support, Omni states that "a wet floor sign is always placed in the lobby of the Hotel in front of the revolving [door] when there is inclement weather as a precautionary measure to warn patrons to be careful when entering the Hotel from the inclement weather conditions." *Id.* (citing Doc. 79-2, ¶ 6). On September 25, 2018, that wet floor sign "was placed in the lobby in front of the revolving door at approximately 2:30 p.m. (about five hours before the incident) as precaution for people entering the Hotel from the rain." *Id.* at 28 (citing Doc. 79-2, ¶ 21). The wet floor sign was "placed such that it would be the first thing people saw when they entered the Hotel." *Id.* (citing Doc. 79-2, ¶ 7). Omni thus concludes that there is "no evidence establishing some deficiency with the location of the warning sign or its content." *Id.*

However, as discussed immediately above, the parties vigorously dispute whether the sign was actually effective in its placement well within the lobby. Granted, the sign appeared to be centered opposite the revolving door. However, a guest would have to fully step into the lobby to

see the sign and would likely take at least a few steps prior to seeing it. If one slipped upon initial entry, placing one's foot on the exposed marble between the revolving door and the inside mat, the sign would be visible *after* the event. The effectiveness of the sign is thus a proper consideration for a fact-finder. There is a genuine dispute regarding whether Omni discharged its duty to warn Plaintiff of the alleged condition as a matter of law.

## V. CONCLUSION

Because the Court has found multiple genuine disputes as to material facts, summary judgment is inappropriate in the case at this time. Accordingly, Defendant's Motion for Summary Judgment [Doc. 79] is DENIED. To expedite the litigation, the Court hereby reminds the parties that the joint trial memorandum is due within thirty (30) days following entry of this Ruling – on or before Monday, **April 7, 2025**

It is SO ORDERED.

Dated: New Haven, Connecticut
        March 6, 2025

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT. JR.
Senior United States District Judge

33