UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------  x
                                                              :
HUI WANG,                                                     :
                                                              :
                                        Plaintiff,            :
                                                              :
        -against-                                             :
                                                              :
OMNI HOTELS MANAGEMENT CORPORATION,                           :
                                                              :
                                        Defendant.            :
                                                              :
                                                              :
------------------------------------------------------------  x
```

**RULING ON MOTIONS
*IN LIMINE* AND
PLAINTIFF'S PRETRIAL
MOTIONS**

3:18-cv-2000 (VDO)

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Hui Wang brings suit against Omni Hotels Management ("Omni") seeking damages from a fall she suffered on September 25, 2018, in the lobby of the Omni New Haven Hotel at Yale (the "Hotel"). Wang alleges that she fell due to "water that had accumulated on the floor" and that Omni was negligent in allowing that water to accumulate and in failing to warn her about the slipping hazard.[1] Earlier this year, the Court (Haight, J.) denied Omni's motion for summary judgment. *Wang v. Omni Hotels Mgmt. Corp.*, 2025 WL 744289 (D. Conn. Mar. 6, 2025). In advance of trial, Omni has filed a number of motions *in limine*, and Wang has filed a flurry of her own motions. The Court now resolves all pending motions in turn.

---

[1] Compl., ECF No. 1-1 at 5-6.

I.    <u>**ANALYSIS**</u>

   A.    **Omni's motions *in limine***

   Motions *in limine* provide district courts the opportunity to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A court should only grant a motion *in limine* and exclude evidence pursuant to that motion if the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank*, No. 09-cv-1955-VLB, 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). If a motion may have merit but the court cannot determine that there is no permissible purpose for which the evidence could be offered at trial, a court should "reserve judgment on [that] motion[] *in limine* until trial so that the motion [can be] placed in the appropriate factual context." *Bryant v. City of Hartford*, 585 F. Supp. 3d 179, 185 (D. Conn. 2022).

   1.    **Omni's motion to preclude Plaintiff's expert**

   First, Omni seeks to preclude the admission of Douglas A. Fisher, a "forensic engineering expert" with "more than 35 years of diversified engineering experience in the fields of forensic evaluations, building design, and construction administration."[2] Omni seeks to preclude three of Mr. Fisher's opinions: (1) his "opinions regarding the cause of Plaintiff's fall," (2) his opinions regarding the proper placement of the floor mats in the Hotel lobby, and (3) his opinions regarding the characteristics of the Hotel flooring.[3] As to each, Omni raises essentially three challenges: (1) as it would be offered as an exhibit, Fisher's export report contains inadmissible hearsay, (2) Fisher's opinions are not based on sufficiently reliable

---

[2] Resume of Douglas A. Fisher, ECF No. 113-2 at 2.

[3] Mem. in Supp. of Mot. *in Limine* to Preclude Douglas Fisher, ECF No. 100-1 at 4-10.

methodologies, and (3) Fisher's opinions are not likely to be helpful to the jury.[4] The Court examines each opinion that Omni seeks to have suppressed in turn.

First, Omni objects to Fisher's opinion that "'Ms. Wang was caused to slip, fall, and become injured due to moisture on an exposed area of the marble tile flooring.'"[5] Omni also objects to Mr. Fisher's further opinions that "'[t]he Omni hotel failed to maintain the subject area in a safe condition,'" and "'Omni failed to inspect the floor in order to prevent a hazardous and dangerous condition.'"[6]

District courts play a "'gatekeeping' function" under Rule 702 and "are charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). A Rule 702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *accord Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2024 WL 4476088, at *6 (S.D.N.Y. Oct. 11, 2024). The party proffering the expert—here, the Plaintiff—bears the burden of establishing Rule 702's requirements by a preponderance of the evidence. *United States v.*

---

[4] Omni's motion does not challenge Fisher's qualifications to testify as an expert, but nonetheless seeks to exclude the entirety of his testimony because, it argues, every opinion he argues is impermissible.

[5] Mem. in Supp. of Mot. *in Limine* to Preclude Douglas Fisher at 4 (quoting Fisher Report, ECF No. 113-1 at 9).

[6] *Id.* (quoting Fisher Report at 8, 9).

*Jones*, 965 F.3d 149, 161 (2d Cir. 2020); *see also* Fed. R. Evid. 702. ("A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is *more likely than not* that [the criteria for admissibility are met] . . . ." (emphasis added)).

Omni contends that "Mr. Fisher's opinions regarding the cause of plaintiff's fall will not help the jury because they are not based on any scientific, technical, or other specialized knowledge and instead address lay matters which a jury is capable of understanding and deciding on its own."[7] Specifically, Omni argues that "Mr. Fisher's opinions that Plaintiff fell due to moisture on the lobby floor, and that Omni therefore failed to maintain the lobby in a safe condition, address 'matters that [are] neither scientific nor in any way beyond the jury's ken.'"[8] Relatedly, Omni argues that Fisher's opinions are impermissible because he "does not apply any type of technical analysis or expertise to his review of the videotape, and the jury is equally capable of watching the videotape and determining for itself what that videotape shows."[9]

The Court concludes that two of Fisher's three opinions are admissible. In essence, Omni argues that determining what happened when Ms. Wang fell is so straightforward a task that a jury can review the video of her fall and other evidence and reach a conclusion as to the issues in dispute without the assistance of an expert. That might be true. But the standard under Federal Rule of Evidence 702(a) is whether "the expert's scientific, technical, or other

---

[7] Mem. in Supp. of Mot. *in Limine* to Preclude Douglas Fisher at 5.

[8] *Id.* (quoting *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)).

[9] *Id.* at 6.

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Here, even if a jury could review the video and reach its own conclusions as to both (1) the cause of Ms. Wang's fall and (2) whether the floor was maintained in a safe condition, the Court concludes that Fisher's expertise as an engineer will assist the jury in that task and that these two opinions are based on sufficiently reliable methods and data to be admissible.

In preparing his report, Fisher did more than Omni claims: Rather than merely reviewing video, Fisher relied on his knowledge of the relative slipperiness of flooring materials under different conditions and industry standards for mitigating slipping risks.[10] Fisher then applied this background to the video he saw and drew conclusions on that basis. In so doing, he relied on the coefficient of friction, "a numeric value that represents the amount of friction between two objects" as determined by a tribometer, as well as the American National Standards Institute guidelines for commercial entrance matting.[11] Expert testimony regarding the mechanics of a fall and industry safety standards and their supporting reasoning is more likely than not to help the jury resolve material issues in dispute.

A jury reviewing a videotape of a fall can understand likely sources of the fall from its own experience and commonsense but would likely nonetheless be helped by Fisher's testimony pointing the jury towards indicia of one type of fall or another. Even if the jury could resolve these issues without Fisher's testimony, the testimony Fisher seeks to provide is likely to help the jury reach their determinations. Similarly, a jury undoubtedly will have experience

---

[10] Fisher Report at 4-5.

[11] *Id.* at 4.

walking on marble but would nonetheless be assisted by a technical explanation of the circumstances that make marble more or less slippery and how those risks can be mitigated. Put otherwise, a jury would necessarily be limited by its own experiences; an expert can assist a jury in understanding considerations that they may not have contemplated.

And the Court concludes that these two of Fisher's opinions are based in sufficiently reliable methods and data. As to this prong, Omni argues that Fisher's opinions are unreliable because Fisher did not test the exact surface in question but rather relies on generic measurements for marble materials. That is insufficient to render Fisher's analysis unreliable. Testimony in the record indicates that the floor is marble.[12] It was reasonable, therefore, for Fisher to draft his report with that assumption in mind. There is no contrary basis in the record to indicate that the flooring in question is so unique as to render Fisher's generalized review unreliable without individualized testing. Because Fisher employed technical methods that are likelier than not to assist the jury and because Fisher utilized sufficiently reliable methods and data, the Court denies the motion *in limine* as to his opinions regarding the cause of Wang's fall and whether the floor was maintained in a safe condition.

To the contrary, Fisher applied no particular expert methodologies to conclude that "Omni failed to inspect the floor in order to prevent a hazardous and dangerous condition." Instead, Fisher merely summarized testimony in the record from Omni employees and found that Omni's employees perhaps could not have seen the front lobby well enough to look for liquid on the floor and may have failed to examine the lobby frequently on the day in

---

[12] ECF No. 113-5 at 5.

question.[13] These conclusions are based on straightforward review of the evidence without application of particular "scientific, technical, or other specialized knowledge," and therefore allowing Fisher to testify on this issue would impermissibly usurp the role of the jury. Fed. R. Evid. 702(a). For that reason, the Court precludes Fisher from testifying regarding this opinion pursuant to Rule 702.

Finally, having determined that Fisher may offer at least some opinions, the Court turns to the issue of hearsay contained within his report. At oral argument, Plaintiff's counsel indicated that he would have no issue redacting portions of Fisher's report that contained hearsay, even though "[u]nder Rule 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008)[14]; *see also* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").

Because the Parties may be in agreement on a path forward regarding alleged hearsay in Fisher's report, the Court need not resolve whether each potentially inadmissible statement in Fisher's report meets Rule 703's standard. The Court, therefore, orders the Parties to

---

[13] Fisher Report at 7-8.

[14] Unless otherwise noted, this opinion omits internal quotations and citations in quotations from cases and other authorities, and adopts alterations contained therein.

coordinate regarding redactions to Mr. Fisher's report to remove hearsay and the opinion precluded by this Ruling, and to file a redacted version to be used as an exhibit on the docket on or before July 8, 2025.[15]

### 2. Omni's motion to preclude the admission of its internal policies and procedures

Omni seeks to preclude Wang from offering as exhibits three Omni internal policy documents.[16] These three documents are labeled as policy numbers 5.15, 5.42, and 5.70, procedures for "Hotel Entrance and Lobby," "Corridors/Public Areas/Stairwell Cleanliness," "Wet floor sign usage."[17] Omni contends that Wang has not identified any permissible purpose for the admission of these exhibits. Wang disagrees and proferrs a justification for offering each policy. The Court now examines each proposed exhibit in turn.

First, Wang contends that the "Hotel Entrance and Lobby" policy document is admissible as evidence of negligence because it includes a statement that "[g]uests' attention upon entering the lobby should focus on a large fresh floral arrangement centrally located to the entrance[.]"[18] Wang claims this is evidence of negligence because it indicates that the Hotel sought to draw invitees' attention away from any warning signs and towards the flowers. Further, the policy states that "marble . . . must be clean and polished at all times," which Wang claims is evidence of the likely state of the floor at the time of the incident, as well as

---

[15] In the event the Parties cannot reach agreement regarding hearsay redactions, they may file a joint notice on the docket indicating the specific statements that they disagree on and briefly stating each party's position regarding the specific statement.

[16] Mot. to Preclude Pl. from Offering Internal Policies, ECF No. 101.

[17] ECF No. 115-1.

[18] ECF No. 115-1 at 2.

evidence of negligence because such polishing could increase the slipperiness of the floor.[19] The Court is satisfied that, depending on the development of evidence and testimony at trial, this policy might be admissible to demonstrate negligence and the likely state of the floor at the time of the incident. Therefore, because the Court can only preclude admission of an exhibit at this stage if the Court concludes that there is no possible permissible purpose for the evidence, the Court denies the motion as to this policy. However, the evidence at trial might not indicate that these policies were relevant or at issue in this action. If Wang then seeks to offer this policy as an exhibit, Omni remains free to renew its objection.

As to "Corridors/Public Areas/Stairwell Cleanliness," the only relevance that Wang identifies is potential impeachment: In this action, Wang says, Omni employees testified that they checked the ceilings for cleanliness every five or ten minutes. This policy document, however, only requires cleaning "on a daily basis."[20] At the pretrial conference, Wang proffered that this policy document might be offered for purposes of impeaching Omni employees who claimed that they had checked the floor for water every 5-10 minutes. The jury might conclude, Wang's counsel argued, that performing work so far above the standard required by policy is incredible and might draw an adverse inference against the rest of the testimony from those Omni employees on that basis. The Court cannot, at this stage, conclude that this document could not be impermissible for this limited purpose, and therefore declines to preclude it entirely at this stage. As with the prior policy document, however, whether this policy is ultimately admissible will depend on the development of evidence at trial.

---

[19] *Id.*

[20] *Id.* at 4.

Third, Wang contends that the "Wet floor sign usage" policy is admissible not because Omni failed to follow the policies described therein, but as evidence that Omni was on notice of the dangerous condition its invitees faced. In order for a "plaintiff to recover for the breach of a duty owed to him as a business invitee, it is incumbent upon him to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused his injury or constructive notice of it." *Wang*, 2025 WL 744289 at *11. Omni contends that the fact that it put out warning signs on the day that Wang fell does not indicate that it was on notice of the condition of the floor being wet. Omni argues that the placement of a warning sign does not support the inference that Omni was aware of a wet floor.[21] The Court disagrees. In this action, there has been deposition testimony from Omni employees indicating that signs were placed because of observed water on the hotel floor. Alongside this testimony, the wet floor sign policy (and actions taken by Omni employees that comply with that policy) is permissible circumstantial evidence that Omni employees saw water on the floor. Because the trier of fact could draw the inference that Omni employees placed the sign because they saw water on the floor and sought to comply with Omni's policies, the Court declines to preclude this policy at this time.

Lastly, Omni seeks a limiting instruction regarding these policies if they are offered. Because these exhibits have not yet been offered to a jury for a specific purpose, Omni's request is premature. Omni may renew its request if these exhibits are, in fact, offered at trial.

---

[21] Reply Br. for Mot. to Exclude Internal Policies, ECF No. 121 at 5.

### 3.    Omni's motion to preclude photographs taken by Wang's counsel

Omni next seeks to preclude a set of photographs taken by Wang's counsel roughly a year after the incident.[22] Omni asserts, and Wang's counsel concedes, that the photographs were taken without any notice to Omni. That represents a clear violation of the Federal Rules of Civil Procedure. Under to Federal Rule of Civil Procedure 34, a party may "serve on any other party a request within the scope of Rule 26(b)" to obtain "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Rule 34(b) outlines the required information that must be included in such a request. Fed. R. Civ. P. 34(b). Wang's counsel met none of these requirements because he made no such request.

Instead, Wang argues that (1) prejudice is minimal because the photographs were disclosed in 2019 to Omni and did not violate any protective order and (2) Omni has waived any objection to the use of these photographs because it (along with Wang) used the photographs in a deposition in 2019. The Court disagrees. The aim of discovery rules is to conduct discovery in an organized, efficient, and equitable manner, and failure to comply with those rules frequently warrants sanctions. Moreover, that Omni used the photos in the same deposition as Wang's counsel does not waive their objection but rather preserved Omni's ability to reference deposition questions about the photographs if they were ultimately allowed into evidence at trial. At bottom, there is no evidence that Wang ever served Omni any request or obtained authorization to photograph its property, and therefore Wang was clearly in

---

[22] Mot. to Preclude Photographs, ECF No. 102.

violation of Rule 34. As a result, the Court grants Omni's motion and precludes admission of the photographs as a sanction for that violation.

### 4.    Omni's motion to preclude hearsay within certain records

Omni seeks "an Order precluding Plaintiff from using hearsay within certain records as proof of the existence of water on the floor."[23] At the pretrial conference, Wang represented that she was willing to redact some impermissible statements and would use other hearsay statements not for the truth of the matter asserted. Omni's motion is nonspecific, only noting examples of various statements that it considers hearsay within different exhibits. Therefore, the Court declines to offer a prospective line-by-line review of each potentially problematic statement in a lengthy list of exhibits. Instead, given their potential agreement, the Parties are directed to meet and confer regarding redactions: Omni should raise any statements it considers impermissible, and Wang should consider whether she is willing to redact those statements in the exhibits. The Parties should re-file the amended exhibits as part of the exhibit binders they submit to the Court on or before July 8, 2025. In the course of testimony, the Court will rule on hearsay objections to questions as they arise. For the time being, the motion is denied as moot without prejudice to refiling if the Parties cannot reach an agreement on redactions.

---

[23] Mot. to Preclude Hearsay in Records, ECF No. 125 at 1.

### 5.     Omni's motion to preclude the introduction of certain medical records

Omni seeks an order precluding Plaintiff from introducing two sorts of medical evidence: (1) late-disclosed medical bills from Yale Health, and (2) Chinese medical records detailing treatment obtained overseas.[24]

Omni first seeks to exclude certain medical records that it claims (and Wang concedes) were not produced during discovery. "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of this rule is to prevent the practice of sandbagging an opposing party with new evidence." *Corley, v. United States*, No. 3:22-CV-1007 (AWT), 2025 WL 1734697, at *13 (D. Conn. June 23, 2025). "The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified, and that it was harmless." *Id.*

Here, Wang cannot prove that its non-compliance was substantially justified nor that its noncompliance was harmless. There is no basis on which to conclude that this failure was justified by a particular complication or, say, the late discovery of relevant evidence: Instead, Wang concedes that its failure to disclose these documents was merely an oversight. Nor can Wang prove a lack of prejudice: Omni has had no opportunity to depose witnesses regarding

---

[24] Mot. to Preclude Med. Records, ECF No. 126.

these documents in advance of trial.[25] Therefore, the Court concludes that records that Wang failed to disclose during discovery must be precluded and grants the motion: Pages 1 and 2 of Exhibit 40 and all of Exhibit 57 may not be offered at trial. Of course, Wang may nonetheless testify from her own memory, but she cannot offer these documents as exhibits to corroborate that testimony.

As to the overseas medical records, it is too early for a final determination as to whether they may be offered at trial. Certainly, Omni is correct that foreign medical records are substantially more difficult to authenticate than other records. But Wang's counsel indicated at the pretrial conference that he believes Wang can authenticate the documents on the stand at trial. The Court, therefore, denies this portion of Omni's motion *in limine* as premature, but will take up at trial any objection Omni maintains as to these records.[26]

Lastly, Omni seeks to preclude admission of a future pain and suffering exhibit.[27] Omni's objections as to relevance and authentication are properly reserved for resolution in the context of trial itself. Omni further contends that Wang has failed to produce any evidence to support her claims for future damages, and so this exhibit—which pertains to damages for future medical costs or other pain and suffering—and, in essence, ask for judgment as a matter of law on this issue.[28] In her damage analysis, Wang clearly discussed, in detail, the potential

---

[25] Instead, Wang contends that the Court should consider an alternative sanction, but offers no detail as to what such a sanction might be or why this alternative sanction might be sufficient.

[26] The same is true as to other records that, Omni contends, "will be inadmissible" at trial if issues with them are not rectified. Whether Wang can authenticate these records is an issue for trial.

[27] Mem. in Supp. of Mot. to Preclude Med. Records, 126-1 at 7-8.

[28] *Id.* at 7-9.

of future economic damages.[29] The Court declines to decide this issue on the basis of the limited record present in a motion *in limine* and after Omni has already had the chance to move for summary judgment and denies this portion of the motion without prejudice. If Omni believes, at the conclusion of Wang's case-in-chief, she has failed to adduce sufficient evidence regarding future damages to establish that a jury should review these claims, it may move for judgement as a matter of law.

### 6.    Omni's motion to preclude the permanency opinion of Dr. Yoo

Omni seeks to preclude Dr. Brad Yoo from offering opinions about the permanency of Wang's injuries.[30] Dr. Yoo last treated Wang in 2019 but only formulated his opinion as to the permanency of her disability in 2022 through his review of years-old medical records.[31] And, during videotaped testimony, Dr. Yoo conceded that because his opinion as to permanency was based on information at least five years old, he "d[id] not know if [Wang] has any disability currently."[32]

But Wang seeks to offer Dr. Yoo to testify regarding a probable current disability. That is impermissible: "[W]hen the nature and scope of the treating physician's testimony strays from the core of the physician's treatment, Rule 26(a)(2)(B) requires the filing of an expert report from that treating physician." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007) (collecting cases). Dr. Yoo's permanency opinion—formed separately from his treatment of Wang and on the basis of years-old information—cannot constitute the opinion

---

[29] ECF No. 137-1.

[30] Mot. to Preclude Permanency Op., ECF No. 127.

[31] Video Testimony of Dr. Brad J. Yoo, ECF No. 129-1 at 26-27, 48-49.

[32] *Id.* at 49.

of a doctor treating Wang, and, instead, would require a separate expert designation. *Cf. Cramer v. Berryhill*, No. 1:15-cv-769, 2017 WL 4784318, *3 (W.D.N.Y. Oct. 24, 2017) (quoting *Partlow v. Astrue*, No. 2:09-cv-471, 2011 WL 320955, *4 n.7 (E.D. Va. Jan. 28, 2011) ("'[A]n individual's status as a treating physician is contingent upon the existence of an ongoing treatment relationship.'")). As a result, the Court concludes that Dr. Yoo's opinions as to permanency must be excluded and grants Omni's motion to exclude this opinion from Dr. Yoo's testimony and report. The Parties are directed to edit or redact Dr. Yoo's report and testimony consistent with this ruling.

## II.    WANG'S MOTIONS

### A.    Wang's motion to supplement exhibit list

Wang first seeks to supplement the exhibit list with various exhibits that, her counsel explains, were inadvertently left off the list at the stage of submitting the joint trial memorandum.[33] Because Wang's request is after the initial deadline for the joint trial memorandum,[34] the request is untimely, filed roughly two weeks after the deadline to submit the pretrial memorandum. Omni contends that, under Federal Rule of Civil Procedure 6(b)(1), Wang needs to demonstrate good cause to request what amounts to a *nunc pro tunc* extension of time to supplement her exhibit list, and that good cause is lacking because of the extent of Wang's delay.[35]

---

[33] Mot. to Supplement Ex. List, ECF No. 139.

[34] *See* Dkt. Ord., ECF No. 107.

[35] Mem. in Opp. to Mot. to Supplement Ex. List, ECF No. 146.

The Court disagrees. Wang's delay is relatively insignificant, and the Parties remain several weeks away from trial. The Court therefore finds that Omni would be minimally prejudiced, if at all, by allowing Wang to supplement her exhibit list. And good cause is present: Trial is an exercise in management of an extraordinary amount of logistics, so these sorts of mistakes, though regrettable, are not uncommon. The aim of trial is to allow the factfinder to make the most educated decision they can in determining facts in dispute, and to deny the trier of fact access to these exhibits on the basis of minimal prejudice would be at odds with that aim. The Court therefore grants Wang's motion to supplement the exhibit list.[36]

### B.    Wang's motion to amend the complaint

Wang further seeks to amend her complaint, nearly seven years after this action was first filed.[37] Rule 15(a)(1) sets the standard for amending the pleadings as a matter of course. "A party may amend its pleadings once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). The Second Circuit has observed that, "[a]t the outset of the litigation, a [party] may freely amend her pleadings pursuant to Rule 15(a)(1) as of right *without* court permission." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).

---

[36] Omni also argues that at least some of the exhibits would, at any rate, be inadmissible on other grounds, including that some of the photos appear to be from the same undisclosed site visit that is the subject of Omni's motion *in limine* at ECF No. 102. Omni remains free to raise that objection either at trial or in a motion *in limine*, which the Court will consider out-of-time as a result of Wang's own out-of-time inclusion of these exhibits.

[37] Mot. to Amend Compl., ECF No. 117.

Rule 15(a)(2) states that, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Once the Rule 15(a)(1) period for amendment as a matter of course ends, the party "must move the court for leave to amend, but the court should grant such leave 'freely . . . when justice so requires' pursuant to Rule 15(a)(2)." *Sacerdote*, 9 F.4th at 115 (quoting Fed. R. Civ. P. 15(a)(2)). "This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, . . . futility,'" or undue prejudice. *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

The period of Rule 15(a)(2) "liberal" amendment ends "if the district court issues a scheduling order setting a date after which no amendment will be permitted." *Sacerdote*, 9 F.4th at 115. Here, just such an order was posted, setting the deadline for amendment of pleadings for February 4, 2019.[38]

While it nonetheless remains possible for a party to amend the pleadings even after such a deadline, such amendments are governed by Rule 16(b)(4)'s heightened "good cause" standard. Rule 16(b)(4) states: "A schedul[ing] [order] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing Scheduling Order[.]" *Ramchandani v. CitiBank Nat'l Ass'n.*, 616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022). "A party is not considered to have acted diligently where the proposed amendment is based on

---

[38] Dkt. Ord. on Pretrial Deadlines, ECF No. 3.

information that the party knew, or should have known, in advance of the motion deadline."
*Guity v. Uniondale Union Free Sch. Dist.*, No. 12-CV-1482, 2014 WL 795576, at *4 (E.D.N.Y. Feb. 27, 2014). Additionally, "[t]he burden of demonstrating good cause rests with the movant." *Ramchandani*, 616 F. Supp. 3d at 357.

Here, Wang seeks to add additional information regarding her medical treatments and the ways in which she believes Omni was negligent.[39] Omni opposes the motion, arguing that Wang has not shown good cause to allow a near seven-year variance to the original scheduling order.[40]

The Court agrees with Omni. Wang's own motion makes clear that she was aware of the information she seeks to add for some time. Her explanation for the delay is, essentially, that the matter was progressing slowly and that she moved quickly after the issuance of the summary judgment opinion.[41] But waiting while motions remained pending before the Court does not suffice to show diligent efforts to update the complaint. And Wang adduces no particular prejudice that she might face if her motion is denied. For these reasons, Wang has not shown that she acted expeditiously to update her complaint, and her motion to amend the complaint is denied.[42]

---

[39] Mot. to Amend Compl. at 1-2.

[40] Opp. to Mot. to Amend Compl., ECF No. 119.

[41] Reply Br. in Supp. of Mot. to Amend Compl., ECF No. 131 at 8-9.

[42] The Court notes that the proposed amendments to the complaint adduced only additional detail, and not additional requests for relief nor remedies. To the extent that Wang or her experts seek to testify regarding the content in the proposed amendments, that testimony may or may not be permissible, but it is not prohibited by this ruling.

### C.     Wang's motion to depose Omni's rebuttal expert

Finally, Wang seeks leave to depose Omni's rebuttal expert.[43] Again, Omni opposes the motion, again arguing that Wang has not shown the requisite "good cause" to modify the scheduling order as required by Federal Rule of Civil Procedure 6(b).[44] In early April, Omni sought leave to designate a rebuttal expert, with Wang's consent.[45] That motion was granted in late April.[46] On May 27, 2025, Omni designated the contemplated rebuttal expert, Anthony D. Cornetto.[47] Within a week, Wang sought to coordinate a deposition of Cornetto, but received no response.[48] Roughly two weeks later, Wang filed the instant motion.[49]

Wang has shown good cause for this relatively short delay and would face significant prejudice if she was unable to depose Mr. Cornetto in advance of trial. The delay that Omni complains of is insignificant, particularly in comparison to Omni's own delays in seeking leave to designate a rebuttal expert and in designating that expert. Further, Wang's delay is reasonable in light of Omni's failure to respond to Wang's attempts to facilitate a deposition. Wang acted expeditiously, and waiting for a reply from Omni certainly constitutes good cause for further delay.

---

[43] Mot. for Leave to Depose Def.'s Rebuttal Expert, ECF No. 145.

[44] Mem. in Opp. to Mot. for Leave to Depose Def.'s Rebuttal Expert, ECF No. 151.

[45] Consent Mot. to Designate Rebuttal Expert, ECT No. 98.

[46] Dkt. Ord., ECF No. 103.

[47] ECF No. 145-1.

[48] ECF No. 152-1.

[49] Mot. for Leave to Depose Def.'s Rebuttal Expert at 1.

Omni argues that Wang should have filed this motion as soon as Omni filed its consent motion, indicating that it was considering designating a rebuttal expert. Not so: Omni had yet to designate an expert, and so there was no deposition to take. Once an expert was designated, Wang moved quickly to take a deposition of that expert. Lastly, Omni contends that coordinating a deposition in the few weeks before trial may prove difficult. That certainly may be the case. But the Court trusts that the Parties will work expeditiously to overcome any scheduling difficulties.

Because Wang has shown good cause, the Court grants her motion and will allow her three hours to depose Mr. Cornetto.

## III.    **CONCLUSION**

For the reasons set forth above, the Court GRANTS in part and DENIES in part ECF No. 100, DENIES ECF No. 101, GRANTS ECF No. 102, DENIES ECF No. 117, DENIES ECF No. 125, GRANTS in part and DENIES in part ECF No. 126, GRANTS ECF No. 127, GRANTS ECF No. 139, and GRANTS ECF No. 145.

**SO ORDERED.**

Hartford, Connecticut
June 27, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge